No. 22-6086

# UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

WHYTE MONKEE PRODUCTIONS, LLC, TIMOTHY SEPI,

*Plaintiffs-Appellants,*

v.

NETFLIX, INC., ROYAL GOODE PRODUCTIONS LLC,

*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA,
HON. TIMOTHY D. DEGIUSTI
NO. 5:20-CV-00933-D

## SUPPLEMENTAL *AMICUS CURIAE* BRIEF OF MOTION PICTURE ASSOCIATION, INC. IN SUPPORT OF DEFENDANTS-APPELLEES

Kelly M. Klaus
Shannon Galvin Aminirad
MUNGER, TOLLES, & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
Telephone: (415) 512-4000
Email: kelly.klaus@mto.com
Email: shannon.aminirad@mto.com

Rose Leda Ehler
MUNGER, TOLLES, & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Email: rose.ehler@mto.com

*Attorneys for Amicus Curiae
Motion Picture Association, Inc.*

# CORPORATE DISCLOSURE STATEMENT

The Motion Picture Association, Inc. ("MPA") is a not-for-profit trade association. The MPA's members are Netflix Studios, LLC,[1] Paramount Pictures Corporation, Sony Pictures Entertainment Inc., Universal City Studios LLC, Walt Disney Studios Motion Pictures, and Warner Bros. Entertainment Inc. The MPA does not have any parent companies, and no publicly held company owns 10% or more of the MPA.

DATED: June 3, 2024        Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By:    /s/ Kelly M. Klaus
       KELLY M. KLAUS
       Attorneys for *Amicus Curiae* Motion
       Picture Association, Inc.

---

[1] Defendant-Appellee Netflix, Inc. is the parent company of Netflix Studios, LLC.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................1

I.      Question 1:  The Relevant Precedent Involving Documentary Uses Of Works For Preamble Purposes Is Apposite To Defendants' Use Of The Funeral Video ......................................................................................1

II.     Question 2:  *Warhol* Illustrates The Importance Of Context, Consistent With Longstanding Precedent .......................................................4

III.    Question 3:  The Panel's Bright-Line Rule Is Inconsistent With The Context-Specific Inquiry That Section 107 And *Warhol* Require ..................5

CONCLUSION .....................................................................................................6

## **TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
   598 U.S. 508 (2023) ................................................................... 1, passim

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006) ...................................................................2

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ..................................................................... 1, 2, 3

*Elvis Presley Enterprises, Inc. v. Passport Video*,
   349 F.3d 622 (9th Cir. 2003) ..................................................................3

*Infinity Broadcast Corp. v. Kirkwood*,
   150 F.3d 104 (2d Cir. 1998) ...................................................................3

*Kelley v. Morning Bee, Inc.*,
   No. 1:21-cv-8420-GHW, 2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023) ..................................................................................................5

*Lennon v. Premise Media Corp.*,
   556 F. Supp. 2d 310 (S.D.N.Y. 2008) ...................................................2

*Monster Communications, Inc. v. Turner Broadcasting System, Inc.*,
   935 F. Supp. 490 (S.D.N.Y. 1996) ........................................................2

*Twin Peaks Productions, Inc. v. Publications International, Ltd.*,
   996 F.2d 1366 (2d Cir. 1993) .................................................................2

*Whyte Monkee Productions, LLC v. Netflix, Inc.*,
   97 F.4th 699 (10th Cir. 2024) ................................................................5

**FEDERAL STATUTES**

17 U.S.C. § 107 ................................................................................... 2, 3, 5

# INTRODUCTION

The Motion Picture Association, Inc. ("MPA") respectfully submits this supplemental amicus brief to provide its views on the questions set forth in the Court's Order granting Panel rehearing. In particular, the MPA urges the Court to make clear that the inquiry under the first fair use factor is context-driven and fact-specific, and is not reducible to bright-line rules.[2] The case law, including the Supreme Court's decision in *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith* ("*Warhol*"), 598 U.S. 508 (2023), that is relevant to the Court's questions shows that the first fair use factor favors Defendants' use of small portions of the Funeral Video.

# ARGUMENT

I. **Question 1: The Relevant Precedent Involving Documentary Uses Of Works For Preamble Purposes Is Apposite To Defendants' Use Of The Funeral Video**

Courts analyzing the first fair use factor in cases involving documentaries, as well as other works grounded in the real world, engage in a context-specific inquiry of "'whether *and to what extent*' the use at issue has a purpose or character different from the original." *Warhol*, 598 U.S. at 529 (quoting *Campbell v. Acuff-*

---

[2] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), the MPA states: no party or party's counsel authored this brief in whole or in part; no party or party's counsel contributed money to fund the preparation or submission of this brief; and no other person except MPA and its members (*excluding* MPA member Netflix Studios, LLC or any of its affiliates) contributed money intended to fund the preparation or submission of this brief.

1

*Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).  The preamble purposes listed in 17 U.S.C. § 107 of "criticism, comment, news reporting, teaching . . . , scholarship, [and] research" help to guide this inquiry because they are "illustrative" examples of the types of purposes that may weigh in favor of a transformative use.  *Warhol*, 598 U.S. at 528 (first quoting 17 U.S.C. § 107; then quoting *Campbell*, 510 U.S. at 577–78).

Cases involving documentary uses look to the preamble purposes as guideposts, while analyzing the particular purpose of each use in its specific context.  *See, e.g.*, *Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 322 (S.D.N.Y. 2008) (incorporation of song excerpt in film was transformative where specific context indicated it was used "for purposes of criticism and commentary"); *Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.*, 935 F. Supp. 490, 493–94 (S.D.N.Y. 1996) (biographical film's use of footage of heavyweight fight, interspersed with commentary, was transformative because it "constitute[d] a combination of comment, criticism, scholarship and research").  In using the preamble as a guidepost, courts have construed section 107's reference to "comment" to include commentary on subjects beyond the original work itself.  *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609 (2d Cir. 2006) (rejecting argument that each image needed to be accompanied by comment or criticism related to the artistic nature of that image); *see also Twin Peaks Prods.*,

*Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1374 (2d Cir. 1993) (noting that a work that comments about "pop culture" is not removed from section 107's scope).

The fact that a use, even a documentary use, may be commercial is "relevant"—but it "is not dispositive." *Warhol*, 598 U.S. at 531. "[M]ost secondary uses of copyrighted material, *including nearly all of the uses listed in the statutory preamble*, are commercial." *Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir. 1998) (emphasis added); *see also Campbell*, 510 U.S. at 584 (if "commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of" section 107's preamble uses). Many cases finding transformative use in documentaries have involved commercial use. *See* MPA 5/2/24 Amicus Br. at 8–10.

Of course, the preamble serves as an important guidepost for courts conducting fair use analyses, but it alone does not determine the outcome in a particular case. As the Supreme Court explained, "the question of justification will depend on the individual use or uses." *Warhol*, 598 U.S. at 532 n.7 (explaining that even traditional preamble purposes "are not entitled to a presumption of fairness"). The analysis is context-specific and case-by-case. *See Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003) (finding use of some small clips "as historical reference points" was transformative, whereas use of other longer clips "in excess of this benign purpose" was not), *overruled on*

*other grounds by Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th Cir. 2011) (per curiam).

These principles of fair use jurisprudence apply to Defendants' use of the Funeral Video.

## II. Question 2: *Warhol* Illustrates The Importance Of Context, Consistent With Longstanding Precedent

*Warhol* did not disturb the availability of the fair use defense for use of works as historical markers, but rather confirms that fair use is context specific and driven by the facts of the particular use.

*Warhol* made clear that in analyzing the first fair use factor, courts must examine the purpose of the secondary use and whether it substitutes for the original, i.e., "whether the new use served a purpose distinct from the original, or instead superseded its objects." 598 U.S. at 542; *see also* MPA 5/2/24 Amicus Br. at 3. *Warhol* also instructed courts to describe the purposes with specificity and analyze them in context. 598 U.S. at 533 n.8, 535 n.11; *see also* MPA 5/2/24 Amicus Br. at 3–4. The concurrence in *Warhol*, for instance, noted the result on the first factor might differ in another context, such as if the Foundation had sought to display Warhol's image of Prince in a museum or in a book commenting on 20th-century art. 598 U.S. at 557–58 (Gorsuch, J., concurring). Ultimately, "'transformativeness' is a matter of degree." *Id.* at 529.

*Warhol*'s discussion of parody and satire did not create a new requirement that fair use is limited to secondary uses that "comment on" the original work. *See* MPA 5/2/24 Amicus Br. at 4–7. *Warhol* used parody and satire as examples to illustrate the importance of context, and how the former might have a stronger claim to borrowing than the latter. 598 U.S. at 510, 530–31. Nothing in *Warhol* or any other Supreme Court decision establishes a rule that the challenged use must in all cases "comment on" the underlying work to be transformative. MPA 5/2/24 Amicus Br. at 4–7.

### III. Question 3:  The Panel's Bright-Line Rule Is Inconsistent With The Context-Specific Inquiry That Section 107 And *Warhol* Require

The original opinion suggests that a secondary use must comment on or target the original work to be transformative. *Whyte Monkee Prods., LLC v. Netflix, Inc.*, 97 F.4th 699, 713–14 (10th Cir. 2024) (petition for panel rehearing granted in part). For reasons explained in its prior brief, the MPA respectfully submits there is no basis in fair use law for such a bright-line rule. *See* MPA 5/2/24 Amicus Br. at 4–5. A bright-line "comment on" rule would deviate from precedent, precluding a finding of transformative use where, for example, a photograph appears in the background of a documentary. *Cf. Kelley v. Morning Bee, Inc.*, No. 1:21-cv-8420-GHW, 2023 WL 6276690, at *3, *11–12 (S.D.N.Y. Sept. 26, 2023) (transformative use where photographs appeared in background of

documentary as part of film's larger purpose in capturing musician's life, but the photographs were not commented upon in any way).

The MPA urges the Court on rehearing to make clear that the first fair use factor requires courts to compare the purposes of the original and secondary uses, with attention to the specific context of each use. The ultimate purpose of this inquiry is to determine whether the secondary use substitutes for the original. The context here makes clear that Defendants used the Funeral Video for a distinctly different purpose than the original use. *See* MPA 5/2/24 Amicus Br. at 6. The MPA is not aware of any record evidence showing that Plaintiffs and Defendants had shared purposes or that Defendants' use would substitute for Plaintiffs' use.

## CONCLUSION

The MPA respectfully submits that on rehearing the Court should clarify there is no requirement under the first fair use factor that a secondary use "comment on" the original work in order to be transformative.

DATED: June 3, 2024　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　By: */s/ Kelly M. Klaus*
　　　　　　　　　　　　　　　　　　　　　Kelly M. Klaus

　　　　　　　　　　　　　　　　　　　　　Attorneys for *Amicus Curiae* Motion Picture Association, Inc.

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the page limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief is 6 pages.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(A), and the typestyle requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman 14-point.

I hereby certify, pursuant to Circuit Rule 25.5, that all required privacy redactions have been made. I further certify that any hard copies of this brief to be submitted to the Clerk's Office pursuant to Circuit Rules 29.2 and 31.5 are exact copies of the electronic filing. I further certify that the electronic submission was scanned for viruses with the most recent version of Windows Defender and is free of viruses.

DATED: June 3, 2024                MUNGER, TOLLES & OLSON LLP


By:   */s/ Kelly M. Klaus*
      KELLY M. KLAUS
      Attorneys for *Amicus Curiae* Motion
      Picture Association, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that counsel for all parties are registered CM/ECF users and that service to all parties will be accomplished by the CM/ECF system.

*/s/ Kelly M. Klaus*
Kelly M. Klaus