# CASE NO. 22-6086
# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

_____

WHYTE MONKEE PRODUCTIONS LLC, TIMOTHY SEPI,

*Plaintiffs-Appellants,*

*v.*

NETFLIX, INC., ROYAL GOODE PRODUCTIONS LLC,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA (D.C. NO. 5:20-CV-00933-D), HON.
TIMOTHY D. DEGIUSTI

_____

# SUPPLEMENTAL BRIEF OF *AMICI CURIAE* 34 COPYRIGHT AND MEDIA LAW PROFESSORS IN SUPPORT OF DEFENDANTS-APPELLEES ON REHEARING

_____

Phillip R. Malone
Nina K. Srejovic
Alex S. Cohen
Juelsgaard Intellectual Property and
   Innovation Clinic
Mills Legal Clinic at Stanford
   Law School
559 Nathan Abbott Way
Stanford, CA 94305
Telephone: 650-725-6369
Email: pmalone@stanford.edu
*Counsel for Amici Curiae*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................... i

**INTEREST OF *AMICI CURIAE*** ..................................................................................... 1

**SUMMARY OF ARGUMENT** .......................................................................................... 1

**ARGUMENT** ....................................................................................................................... 2

    I.    *Warhol* is a Narrow Decision That is Inapposite to This Case. ....................... 2

    II.   Under Prevailing Fair Use Principles, Appellees' Use Is Transformative. ... 4

**CONCLUSION** .................................................................................................................... 8

**CERTIFICATE OF COMPLIANCE** ................................................................................ 9

**APPENDIX — LIST OF *AMICI*** ...................................................................................... A1

i

# TABLE OF AUTHORITIES

### Cases

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
    598 U.S. 508 (2023) …..……………………………………………1, 2, 3, 4, 5, 6, 8

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) …………………………………………………………2, 4, 5, 7, 8

*Elvis Presley Enters. v. Passport Video*,
    349 F.3d 622 (9th Cir. 2003) …..…………………………………………………..6, 7

*Google LLC v. Oracle Am., Inc.*,
    593 U.S. 1 (2021) ……………………………………….……………………………4, 6

*Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.*,
    935 F. Supp. 490 (S.D.N.Y. 1996) …………………………………………………...7

*Sofa Entm't, Inc. v. Dodger Prods.*,
    709 F.3d 1273 (9th Cir. 2013) …..……………………………………………………6

*Whyte Monkee Prods., LLC v. Netflix, Inc.*,
    97 F.4th 699 (2024) …………………………………………………………..1, 6, 7

### Statutes

17 U.S.C. § 107 ..........................................................................................7

## INTEREST OF *AMICI CURIAE*

*Amici* are 34 law professors who teach and write about copyright and media law. *Amici* have no personal interest in this case.[1] *Amici*'s sole interest is to provide their knowledge and expertise to this Court in affirming the creativity-promoting principles of fair use, consistent with Supreme Court jurisprudence. *Amici* are listed in the Appendix.[2]

## SUMMARY OF ARGUMENT

*Amici* offer this brief to assist this Court in response to its request for supplemental briefing, focusing primarily on the question: "What impact, if any, does the Supreme Court's decision in *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023), have on the content and scope of the [predominant fair use principles applicable to Appellees' documentary use of Appellants' video]?" *Whyte Monkee Prods., LLC v. Netflix, Inc.*, 2024 WL 2126746 (10th Cir. May 13, 2024) (order granting rehearing).

*Warhol* did not impact the underlying principles of fair use in copyright. Rather, *Warhol*'s contribution to fair use jurisprudence was the clarification that it is a defendant's *particular use* of a work at issue, rather than the nature of the defendant's work in the abstract, that defines transformativeness under the first factor. The key question is, in other words, "whether and to what extent an *original work* and secondary *use* have substitutable purposes." 598 U.S. at 536 n.12 (emphasis added). Here, *Warhol*'s narrow inquiry is easily

---

[1] No party's counsel authored this brief in whole or in part, and no party or party's counsel made a monetary contribution intended to fund its preparation or submission. No person other than the *amici* or counsel contributed money to fund preparation or submission of this brief.

[2] *Amici* thank Stanford Law School Juelsgaard Intellectual Property and Innovation Clinic Certified Law Student Sean Arrieta-Kenna for substantial assistance in drafting this brief.

resolved. Appellees' use of Appellants' video to comment on Joe Exotic's megalomania in a documentary does *not* substitute for the original work's purpose of memorializing Travis Maldonado's funeral. Thus, the only question here is the extent to which Appellees' use is transformative under pre-*Warhol* jurisprudence.

Appellees' documentary use of Appellants' original funeral video is not copying to avoid the hard work of fresh creation, but rather to create something altogether novel and different: a commentary on the controversial cultural phenomenon of Joe Exotic. This addition of "new expression, meaning, [and] message" supports Appellees' "claim to fairness in borrowing from another's work." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579, 581 (1994). *Amici* urge this Court to uphold the traditional principles of fair use by affirming Appellees' use is fair under factor one.

## ARGUMENT

### I. *Warhol* is a Narrow Decision That is Inapposite to This Case.

The Supreme Court in *Warhol* made clear it was answering only a very narrow question. *See* 598 U.S. 508, 516 ("On that *narrow* issue, and *limited* to the challenged use, the Court agrees with the Second Circuit . . .") (emphasis added); *see also id.* at 553 (Gorsuch, J., concurring) ("The question before us is a *narrow* one of statutory interpretation.") (emphasis added). That question was: when a commercial, secondary work borrows from an original work, and the specific use of the secondary work overlaps substantially with the purpose of the original work, do such facts favor a finding of fair use? *See id.* at 537–538; 550. In *Warhol*, the Supreme Court answered no.

*Warhol*'s doctrinal innovation is its conclusion that the *allegedly infringing use* of the secondary work—rather than the secondary work in the abstract—is central to the first fair use factor. In *Warhol*, the Court addressed a specific use of Andy Warhol's "Orange Prince"—a license to use the piece "to illustrate a magazine about Prince with a portrait of Prince." *Id.* at 545. Warhol's series of Prince portraits derived substantially from a photograph by Lynn Goldsmith, who had licensed her Prince images to magazines to depict the musician. *See id.* at 520–523. Because the specific use of "Orange Prince," commercially licensing it for a magazine cover, "shared the objectives, of Goldsmith's photograph, even if the two were not perfect substitutes," the Court concluded that factor one of their analysis did not favor a finding of fair use. In other words, the Court in *Warhol* found that Warhol's specific use of Goldsmith's photograph did not have "a purpose or character different from the original," *id.* at 529, because it neither broadly "further[ed] the goal of copyright . . . to promote the progress of science and the arts, without diminishing the incentive to create," nor was "reasonably necessary to achieve [Warhol's] new purpose [i.e., licensing a depiction of Prince for a magazine cover]." *Id*. at 531–532.

At the same time, the Supreme Court in *Warhol* also acknowledged that its analysis would be different had Goldsmith's photograph been used in a different context. *See id.* at 533 ("The same copying may be fair when used for one purpose but not another."); *see also id*. at 534 n.10 ("Had AWF's use been solely for teaching purposes, that clearly would affect the analysis, and the statute permits no other conclusion.").

*Warhol* does not require a secondary work to target the substance or style of the original work for the purpose of comment or criticism in order for a court to find the use

to be fair. *See id.* at 527 n.21 ("[T]argeting is not always required . . . ."). To the extent that *Warhol* can be read to limit the scope of fair use to direct targeting of the original work, it is only for the limited fact pattern where the specific secondary use directly substitutes for—i.e., shares the purpose and character of—the original work. The inquiry thus required by *Warhol* should be easily answered in this case. Here, the specific alleged act of infringement—using funeral footage to tell the story of Joe Exotic, a controversial cultural figure—does *not* share a similar purpose with Appellants' personal video, shot for the purpose of eulogizing and commemoration.

## II. Under Prevailing Fair Use Principles, Appellees' Use Is Transformative.

The Supreme Court acknowledged that its reasoning in *Warhol* did not overrule—and in fact, relied on—preceding Supreme Court cases interpreting fair use. *See id.* at 510 ("The Court's decision in *Campbell* is instructive"); *see also id.* at 543 n.18 ("the same concepts of use and justification that the Court relied on in *Google* [*LLC v. Oracle Am., Inc.*, 593 U.S. 1 (2021)] are the ones that it applies today"). Because the facts here are significantly distinct from *Warhol*, this Court should look to predominant fair use principles, established pre-*Warhol*, to evaluate Appellees' use under the first factor.

A central inquiry of the first factor analysis is "whether and to what extent the new work is 'transformative.'" *Campbell*, 510 U.S. at 579. A secondary work may be transformative by "altering the [original work] with new expression, meaning, or message," *id.*, or by putting the original work to a different use in a new context. *See Google*, 593 U.S. at 3 (finding "Google's limited copying of [Sun Java's] API" to be transformative because Google's distinct purpose to create an interoperable mobile smartphone platform

with the API was "consistent with that creative progress that is the basic constitutional objective of copyright itself"). While transformative works further the goal of copyright, borrowings that "merely 'supersede the objects' of the original creation," *Campbell*, 510 U.S. at 579 (citation omitted), or "which the alleged infringer merely uses to get attention or to avoid the drudgery in working up something fresh," are treated as less fair. *Id.* at 580.

The Supreme Court in *Warhol* found that Warhol's Orange Prince "adds new expression" to Goldsmith's photograph, 598 U.S. at 526, but it nevertheless ultimately concluded that Warhol's secondary work was insufficiently transformative *in its specific use* because it supplanted Goldsmith's original in the particular marketplace for magazine covers. *See id.* at 542–550. But the Court explicitly noted that Warhol's Orange Prince could be sufficiently transformative in other contexts. *See id.* at 557 (Gorsuch, J., concurring) ("[W]hile our interpretation of the first fair-use factor does not favor the Foundation in this case, it may in others.").

Here, where the secondary work, a documentary profiling the peculiar individuals involved in the big cat trade, does *not* supplant or supersede the objects of the original, a personal recording of a funeral, this Court's initial decision incorrectly foreclosed the transformativeness inquiry. Appellees' borrowing can be justified as transformative because, as in *Google*, it deployed the borrowed material as necessary to achieve a different purpose.[3] *Warhol*, 598 U.S at 531–532.

---

[3] This Court already acknowledged this difference in purpose: "Defendants used the Funeral Video, which Mr. Sepi created for the purpose of 'remembrance,' for a different purpose—*viz.*, to comment on Mr. Exotic's purported megalomania." *Whyte Monkee*

Two cases—both involving secondary uses of copyrighted material from *The Ed Sullivan Show*—illustrate this distinction between uses that are sufficiently transformative and those that are not. In *Sofa Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273 (9th Cir. 2013), copyrighted footage of the band the Four Seasons on *The Ed Sullivan Show* was used in the musical *Jersey Boys*. The Ninth Circuit found the first factor to heavily favor the musical's producer because it "put the clip to its own transformative ends" as "a biographical anchor." *Id.* at 1278. Similarly, in *Elvis Presley Enters. v. Passport Video*, 349 F.3d 622 (9th Cir. 2003), a documentary about the life of Elvis Presley made use of unlicensed footage from several of Elvis's television appearances. The Ninth Circuit acknowledged that the documentary's "use of many of the television clips is transformative because they are cited as historical reference points in the life of a remarkable entertainer," and agreed with the lower court that its "nature as a biography transforms the purpose of showing these clips from pure entertainment to telling part of the story of Elvis." *Id.* at 629.

However, the Ninth Circuit also found that other borrowed clips in the Elvis documentary, including some rebroadcast portions of the *Ed Sullivan Show*, were not transformative uses because the documentary's purpose in showing *those* clips was to serve the "same intrinsic entertainment value that is protected by Plaintiffs' copyrights." *Id.* Confirming this similarity of purpose, the Elvis documentary was advertised as "Every Film and Television Appearance" of the musician, which the court viewed as evidence of a purpose "to profit at least in part from the inherent entertainment value

---

*Prods., LLC v. Netflix, Inc.*, 97 F.4th 699, 715 (10th Cir. 2024), *reh'g granted and vacated*, 2024 WL 2126746 (May 13, 2024).

of Elvis's appearances." *Id*. at 628.

Here, Appellees used several short clips of Appellants' footage (and added narrative voice-over and interspersed interviews) to tell the story of the bizarre characters inhabiting the underworld of big cat sanctuaries. Unlike in *Elvis Presley Enters. v. Passport Video*, Appellees' documentary was not advertised or created as a collection of all footage of Joe Exotic, nor did it capitalize on the inherent value of Appellants' video as a recording intended simply to memorialize a funeral. This Court previously acknowledged that Appellees' purpose was "to illustrate Mr. Exotic's purported megalomania, even in the face of tragedy . . . providing a historical reference point in Mr. Exotic's life and commenting on Mr. Exotic's showmanship." *Whyte Monkee Prods., LLC v. Netflix, Inc.*, 97 F.4th 699, 714 (10th Cir. 2024), *reh'g granted and vacated*, 2024 WL 2126746 (May 13, 2024). This distinct purpose is consistent with the purposes highlighted as paradigmatically fair in the preamble to 17 U.S.C. § 107. *See Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.,* 935 F. Supp. 490, 494–95 (S.D.N.Y. 1996) (stating that a documentary "undeniably constitutes a combination of comment, criticism, scholarship and research"). Appellees' commentary had "a critical bearing on the substance . . . of the original composition" insofar as it used Appellants' video of Mr. Exotic's funeral speech as part of its overall commentary on Mr. Exotic's life; it did not use the video merely to 'avoid the drudgery in working up something fresh.'" *Campbell*, 510 U.S. at 580.

Finally, in deciding the first factor, commerciality is relevant but not dispositive. *See Warhol*, 598 U.S. at 531. Since "the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works . . . the more transformative

the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579. Many quintessential examples of fair use, such as parody and news reporting, are commercial. *See, e.g.*, *Campbell*, 510 U.S. at 569. To categorically preclude any commercial documentary from making use of copyrighted material would be inconsistent with Supreme Court jurisprudence, a dramatic departure from much other fair use precedent, and contrary to the objective of the Copyright Act.

## CONCLUSION

*Amici* respectfully urge this Court to affirm transformative fair use, consistent with prevailing Supreme Court jurisprudence.

Date: June 3, 2024          Respectfully submitted,

> By: /s/ Phillip R. Malone
> Phillip R. Malone
> Nina K. Srejovic
> Alex S. Cohen
> *Counsel for Amici Curiae*
> Juelsgaard Intellectual Property and
>     Innovation Clinic
> Mills Legal Clinic at Stanford
> Law School
> 559 Nathan Abbott Way
> Stanford, CA 94305
> Email: pmalone@stanford.edu
> Telephone: 650-725-6369

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1. This document complies with the page limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

 [X] this document contains 7.5 pages.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

 [X] this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 16.84 in 13-Point Times New Roman font.

Date: June 3, 2024

                              /s/ Phillip R. Malone
                              Phillip R. Malone
                              Nina K. Srejovic
                              Alex S. Cohen
                              *Counsel for Amici Curiae*
                              Juelsgaard Intellectual Property and
                                    Innovation Clinic
                              Mills Legal Clinic at Stanford
                              Law School
                              559 Nathan Abbott Way
                              Stanford, CA 94305
                              Email: pmalone@stanford.edu
                              Telephone: 650-725-6369

# APPENDIX — LIST OF AMICI

Amici curiae are the 34 copyright and media law professors listed below. Affiliation is provided for identification purposes only; all signatories are participating in their individual capacity and not on behalf of their institutions.

**Professor Jonathan Askin**
Brooklyn Law School

**Professor Mark Bartholomew**
University at Buffalo School of Law

**Professor Barton Beebe**
New York University School of Law

**Professor Michael A. Carrier**
Rutgers Law School

**Professor Michael W. Carroll**
American University College of Law

**Professor Zachary Catanzaro**
St. Thomas University College of Law

**Professor Dale Cohen**
UCLA School of Law

**Professor Jorge L. Contreras**
University of Utah S.J. Quinney College of Law

**Professor Stacey Dogan**
Boston University School of Law

**Professor Brian L. Frye**
University of Kentucky College of Law

**Professor Shubha Ghosh**
Syracuse University College of Law

**Professor James Gibson**
University of Richmond School of Law

**Professor Ellen P. Goodman**
Rutgers Law School

**Professor James Grimmelmann**
Cornell Law School

**Professor Laura A. Heymann**
William & Mary Law School

**Professor Peter Jaszi**
American University College of Law

**Professor Stacey M. Lantagne**
Western New England University School of Law

**Professor Lee Ann Wheelis Lockridge**
Louisiana State University Law Center

**Professor Mark A. Lemley**
Stanford Law School

**Professor Yvette Joy Liebesman**
Saint Louis University School of Law

**Professor Orly Lobel**
University of San Diego School of Law

**Professor Glynn Lunney**
Texas A&M University School of Law

**Professor Timothy J. McFarlin**
Samford University Cumberland School of Law

**Professor Mark P. McKenna**
UCLA School of Law

**Professor Viva Moffat**
University of Denver College of Law

**Professor Tyler T. Ochoa**
Santa Clara University School of Law

**Professor Victoria Phillips**
American University Washington College of Law

**Professor Betsy Rosenblatt**
Case Western Reserve University Law School

**Professor Zahr K. Said**
Santa Clara University School of Law

**Professor Pamela Samuelson**
UC Berkeley School of Law

**Professor Jason M. Schultz**
New York University School of Law

**Professor Jessica Silbey**
Boston University School of Law

**Professor Erik Stallman**
UC Berkeley School of Law

**Professor Rebecca Tushnet**
Harvard Law School