No. 22-6086

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

WHYTE MONKEE PRODUCTIONS, LLC, TIMOTHY SEPI,

*Plaintiff-Appellants,*

v.

NETFLIX, INC., ROYAL GOODE PRODUCTIONS LLC,

*Defendant-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA,
HON. TIMOTHY D. DEGIUSTI
NO. 5:20-CV-00933-D

## APPELLEES' RESPONSE TO APPELLANTS' PETITION FOR PARTIAL PANEL REHEARING & PARTIAL REHEARING EN BANC

Robert H. Rotstein
Emily F. Evitt                                    Mack J. Morgan, III
MITCHELL SILBERBERG & KNUPP LLP    MJMLAW PLLC
2049 Century Park East, 18th Floor        6618 N. Hillcrest Ave
Los Angeles, California 90067               Nichols Hills, Oklahoma 73116
Telephone: (310) 312-2000                    Telephone: (405) 343-7454
Email: rxr@msk.com                             Email: mack@mjmlaw.biz

*Attorneys for Defendants-Appellees*
*Netflix, Inc. and Royal Goode Productions LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................... 1

RELEVANT BACKGROUND ....................................................................... 3

I.    IN FINDING THE FIRST FAIR-USE FACTOR WEIGHED IN
      DEFENDANTS' FAVOR, THE PANEL APPLIED SETTLED LAW ........ 5

II.   IN ANALYZING THE SECOND FAIR-USE FACTOR, THE PANEL
      CORRECTLY HELD THAT THE FUNERAL VIDEO WAS NOT AN
      UNPUBLISHED WORK ................................................................. 8

III.  IN FINDING THAT THE FOURTH FACTOR WEIGHED IN FAVOR
      OF FAIR USE, THE PANEL RULED CONSISTENTLY WITH
      SUPREME COURT AND SISTER-CIRCUIT AUTHORITY ..................... 9

      A.    The Opinion's Limited Reliance on the *Restatement* Is Wholly
            Consistent with Settled Law, Including Supreme Court Precedent... 10

      B.    The Opinion Properly Follows and Distinguishes *Campbell*. ........... 11

      C.    Plaintiffs Cannot Point to Supposed "Nonprofit" Use of the
            Funeral Video. ................................................................ 12

      D.    Plaintiffs' Claim to Have "Licensed" the Original Video Is
            Equally Irrelevant, and Contradicted by the Record. ......................... 14

IV.   PLAINTIFFS' PURPORTED FIFTH FAIR-USE FACTOR:
      ATTRIBUTION .......................................................................... 15

CONCLUSION ............................................................................................ 17

CERTIFICATE OF COMPLIANCE ............................................................. 18

CERTIFICATE OF SERVICE ...................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

### CASES

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
  598 U.S. 508 (2023)................................................................2, 5, 6, 7, 15

*Brammer v. Violent Hues Prods., LLC*,
  922 F.3d 255 (4th Cir. 2019) ...................................................................15

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)................................................................3, 10, 11, 16

*Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998) ....................................................................11

*Google LLC v. Oracle Am., Inc.*,
  593 U.S. 1 (2021)................................................................................10, 16

*Hachette Book Grp., Inc. v. Internet Archive*,
  115 F.4th 163 (2d Cir. 2024) ...................................................................11

*Leibovitz v. Paramount Pictures Corp.*,
  137 F.3d 109 (2d Cir. 1998) ....................................................................11

*Philpot v. Indep. J. Review*,
  92 F.4th 252 (4th Cir. 2024) ...............................................................13, 17

*Princeton Univ. Press v. Michigan Document Servs., Inc.*,
  99 F.3d 1381 (6th Cir. 1996) ...................................................................13

*Richardson v. Townsquare Media, Inc.*,
  174 F.4th 299 (2d Cir. 2026) ...................................................................15

*Ringgold v. Black Entm't TV, Inc.*,
  126 F.3d 70 (2d Cir. 1997) ......................................................................14

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984)..................................................................................13

*Video Pipeline, Inc. v. Buena Vista Home Ent.*,
  342 F.3d 191 (3d Cir. 2003) ....................................................................13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Weissmann v. Freeman*,
   868 F.2d 1313 (2d Cir. 1989) ...........................................................................16

*Whyte Monkee Prods., LLC v. Netflix, Inc.*,
   101 F.4th 787 (10th Cir. 2024) ...........................................................................4

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
   227 F.3d 1110 (9th Cir. 2000) ...........................................................................13

### STATUTES

17 U.S.C.
   § 107(1) ...........................................................................................................5
   § 107(2) ...........................................................................................................8
   § 107(4) ...........................................................................................................9

iv

**<u>INTRODUCTION</u>**

After full briefing on the merits, supplemental briefing, amicus participation, and two oral arguments, the Panel issued a detailed, well-reasoned opinion resting on established Supreme Court and circuit authority. The Panel correctly held that Defendant-Appellees' use of a 66-second excerpt of a 24-minute funeral video, edited and interspersed with critique, as part of a biography and commentary about an infamous public figure was fair use under Section 107 of the Copyright Act, 17 U.S.C. § 107 (the "April 30, 2026 Opinion" or "Opinion"). Plaintiffs'[1] kitchen sink-style Petition offers no valid reasons for rehearing or rehearing en banc.

First, Plaintiffs argue that the Opinion erroneously cited the American Law Institute's in-process *Restatement of the Law, Copyright* ("*Restatement*") when addressing the fourth fair-use factor under Section 107 and weighing the four statutory factors. In fact, virtually every proposition for which the Opinion cites the *Restatement* is accompanied by citation to Supreme Court or circuit authority. Nor does the Petition articulate how the *Restatement* is incorrect as cited in the Opinion.

Second, the Petition asserts that the Opinion's treatments of the second and fourth fair-use factors are inconsistent and will somehow bring disaster upon the internet. The argument is illogical. In considering the second factor—the nature of

---

[1] Petitioners are Plaintiffs/Appellants Timothy Sepi and Whyte Monkee Productions, LLC (collectively, "Plaintiffs").

the copyrighted work—the Panel reached the unremarkable conclusion that voluntarily posting a full-length, 24-minute video on YouTube constitutes public dissemination. That YouTube's terms of service require extension of a license has no bearing on whether a cognizable licensing market for a work exists under the fourth fair-use factor, let alone whether such a market exists for derivative uses, which the Opinion correctly recognized to be the only plausible market at issue. Under Plaintiffs' theory, every person who posts a video on YouTube could claim market harm under the fourth factor.

Third, contrary to the Petition's assertion, the Panel faithfully applied the objective, context-specific test articulated in *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) ("*Warhol*"), and expressly disclaimed any genre-based "documentary" presumption. The Petition's claims to the contrary lack support.

Fourth, Section 107's factors do not include "attribution." Plaintiffs identify no decision holding that lack of credit defeats an otherwise fair use.

Finally, in attacking the Panel's conclusion on the fourth fair-use factor—potential harm to the market for the copyrighted work—Plaintiffs ignore that the Panel held, in the alternative, that even if factor four weighed slightly against fair use, that would not overcome the other three factors, which weighed heavily in favor of fair use. Op. 78 n.18. The Petition also ignores the Opinion's well-reasoned

2

treatment of the fourth factor, including the facts that differentiate this case from *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569 (1994), and the Opinion's altogether correct cautions on the "dangers of circularity." Drawn directly from Supreme Court jurisprudence, these cautions hardly betoken a "Circuit split."

As discussed below, the Petition should be denied.

## RELEVANT BACKGROUND

Plaintiffs sued Defendants/Appellees Netflix, Inc. and Royal Goode Productions LLC ("Defendants") for allegedly infringing copyrights in eight videos created during and shortly after Sepi's employment as a videographer at an Oklahoma animal park (the "Park"). Defendants used short excerpts from those videos in their seven-part 2020 documentary series, *Tiger King: Murder, Mayhem and Madness* (the "Documentary"), which focused primarily on the Park's founder, Joseph Maldonado-Passage, aka Joe Exotic—who raised big cats, ran for Governor and President, and later was imprisoned for murder-for-hire. The Documentary—nominated for six Emmy Awards (3App.243)—explored how Exotic's eccentric leadership and a culture of violence destroyed lives.

The most tragic event depicted in the Documentary was the death of 23-year-old Travis Maldonado, Exotic's husband, who died of a self-inflicted gunshot wound. Wearing a clerical collar, Exotic officiated and sang at his spouse's funeral. Sepi, who had previously left the Park's employ, returned to film the ceremony (the

3

"Funeral Video") because "that is what [Travis] would want." 2App.194-197. He livestreamed the video through the Joe Exotic TV YouTube page, where it remained available to the public. 2App.196-200. The Funeral Video runs nearly 24 minutes.

The district court granted summary judgment for Defendants, holding that seven of the videos were works made for hire created within the scope of Sepi's employment at the Park, 17 U.S.C. §§ 101, 201, and that use of the excerpt from the Funeral Video was fair use. The Panel initially affirmed as to the seven "work-made-for-hire" videos but reversed as to the Funeral Video on the first and fourth factors. Dkt. 127. It then granted panel rehearing in part and vacated that opinion, *see Whyte Monkee Prods., LLC v. Netflix, Inc.*, 101 F.4th 787 (10th Cir. 2024), directed supplemental briefing on three questions; received briefs from the parties and several amici; and heard oral argument a second time. Op. 11-12. On April 30, 2026, the Panel issued a second opinion ("Opinion"), again affirming as to the seven work-for-hire videos and holding use of the excerpt from the Funeral Video to be fair use. Dkt. 213. Plaintiffs seek rehearing on the fair use determination.

Rather than follow the scattered structure of the Petition, the following sections address Section 107's four factors in order, as the Opinion does.

4

**ARGUMENT**

**I.    IN FINDING THE FIRST FAIR-USE FACTOR WEIGHED IN DEFENDANTS' FAVOR, THE PANEL APPLIED SETTLED LAW**

The first factor inquires into "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1); Op. 19-20. A court determines whether a secondary use is commercial and "transformative," that is, whether it "has a distinct purpose" furthering copyright's objective "to promote the progress of science and the arts, without diminishing the incentive to create." *Warhol*, 598 U.S. at 531.

The Opinion properly concludes that Defendants' use was "significantly transformative." Op. 47. Applying *Warhol*'s objective inquiry into "***what the user does with the original work***," *see* Op. 21-22 (emphasis added, quoting 598 U.S. at 545), the Panel found that the excerpt served a distinctly different purpose from the original: the Funeral Video's objective purpose was remembrance of Travis Maldonado, while the Documentary used 66 seconds from the video—edited and juxtaposed with criticism by Travis's mother—to illustrate Exotic's megalomania and showmanship and to comment on the big-cat world. Op. 41 & n.10, 44-46. Because the use was significantly transformative and copied only as much as needed, it was justified in *Warhol*'s "broad sense." Op. 46-52.

Against the Petition's accusation to the contrary (Pet. 17-18), the Panel expressly stated: "[O]ur fair use determination does not turn on classifying *Tiger*

5

*King* as a documentary … we do not give such classifications and categories talismanic effect." Op. 43. Instead, the Panel closely examined the specific use made of the excerpted Funeral Video within the Documentary and balanced that highly transformative use against commerciality, holding that the proper focus is the purpose and character of the exploitation of the copyrighted work itself, not the profitability of the secondary work or the platform. Op. 52-54 (citing, *inter alia, Warhol,* 598 U.S. at 532-33; *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985)). The Panel determined that the Documentary's success did not stem in any considerable degree from the Funeral Video excerpts. Op. 54-55.

Other than an incidental mention in a single quotation, the Petition tellingly never addresses Section 107's "purpose and character of the use" language, let alone how the *Warhol* majority construed that language. The Petition nonetheless charges that the Opinion, "animated by a concern for documentary, inadvertently retreated to Justice Kagan's dissenting approach" in *Warhol*. Pet. 17. On the contrary, the Panel applied the *Warhol* majority opinion at every step. It objectively inquired into what Defendants "did" with the original work; treated transformativeness as "a matter of degree;" applied the *Warhol* majority's "justification" framework; and expressly disclaimed the genre-based reasoning Plaintiffs attribute to it. Op. 21-31, 43, 52-53. Indeed, the term "documentary use" appears nowhere in the Panel's

6

analysis. Rather the Opinion uses the term only when quoting the Panel's 2024 order framing the supplemental questions upon rehearing. Op. 11-12.

Plaintiffs further assert that the Panel engaged in a "sleight of hand" that the *Warhol* majority condemned when attacking that case's dissent. The Petition's convoluted argument itself is sleight of hand. Writing for the *Warhol* majority, Justice Sotomayor characterized Justice Kagan's dissent as asserting "that any and all uses of an original work entail the same first-factor analysis based solely on the content of a secondary work." *Warhol*, 598 U.S. at 534 n.10. Here, rather than focusing solely on the content of the Documentary or ignoring how and why the Documentary used the Funeral Video excerpt as it did, the Panel did exactly what the *Warhol* majority instructs: It analyzed the purpose of Sepi's use of the Funeral Video and only then compared that purpose to Defendants' specific use of it in an episode of the Documentary. Wholly in step with the majority's analysis in *Warhol*, the Panel found that those purposes manifestly differ. Op. 41-46.

Relatedly, Plaintiffs assert that the Panel erred because "the specific use at issue here … is an online streaming," Pet. 17, and both Plaintiffs and Defendants used the Funeral Video for that purpose. The assertion is frivolous: the Opinion properly rejected such an approach as flouting the Supreme Court's *Warhol* decision as well as other established jurisprudence. Op. 52-54. In *Warhol*, the Court focused on the *narrow* purpose of the secondary use—the commercial licensing of *Orange*

*Prince* to Condé Nast for publication—and held that Goldsmith's photograph had "substantially the same purpose": both were "portraits of Prince used to depict Prince in magazine stories about Prince," and were commercially licensed by their owners for this very purpose. 598 U.S. at 526. Nothing in *Warhol* or elsewhere in the law counsels that "purpose and character of the use" may be reduced to a term such as "streaming," or that "streaming" of a work embodying transformative use strips the use of its transformative character.

Here, as the Panel held, the uses differ markedly. The Documentary is not a modified version of the Funeral Video; it incorporates a brief excerpt to create something new and distinct—cultural commentary on the toxicity of celebrity and a milieu that glorified violence. Op. 44-46, 72. Given those differing purposes, that both works were disseminated by streaming is irrelevant under *Warhol*. [2]

## II.   IN ANALYZING THE SECOND FAIR-USE FACTOR, THE PANEL CORRECTLY HELD THAT THE FUNERAL VIDEO WAS NOT AN UNPUBLISHED WORK

The second fair-use factor focuses on "the nature of the copyrighted work." 17 U.S.C. § 107(2). Where, as here, a use is transformative, authority instructs that the factor is of limited usefulness. *See* Op. 56. Still, the Panel correctly held that the second factor weighed in favor of fair use.

---

[2] Indeed, Plaintiffs' sole authority that a court should focus on "streaming" as the relevant use is the vacated First Opinion. Pet. 17.

The Funeral Video is indisputably factual: Plaintiff Sepi placed a camera on a tripod, let it run, and never edited the result. Op. 57-58. The Petition does not challenge that finding.

As the Panel held, moreover, when Sepi posted the Funeral Video on YouTube he publicly disseminated it—that is, "control[led] the first public appearance of his expression." Op. 61 (quoting *Harper & Row*, 471 U.S. at 564). Plaintiffs do not contest this finding either. Their sole argument is to claim, based on a technicality in YouTube's terms of service, that the holding is somehow inconsistent with the Opinion noting as to the fourth fair-use factor that Sepi never licensed his work. Pet. 7. But as addressed below, Plaintiffs admitted this themselves, and even assuming Plaintiffs' posting of the Funeral Video entailed a "license," this would have no impact on the Opinion's analysis.

III. **IN FINDING THAT THE FOURTH FACTOR WEIGHED IN FAVOR OF FAIR USE, THE PANEL RULED CONSISTENTLY WITH SUPREME COURT AND SISTER-CIRCUIT AUTHORITY**[3]

The fourth factor asks what effect the use has on the "potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The Panel held that this factor favored Defendants because Plaintiffs failed to dispute the district court's conclusion

---

[3] Plaintiffs do not challenge or even raise the Opinion's conclusion on the third fair-use factor, concerning amount and substantiality of the use. Defendants therefore do not address that factor.

that *Tiger King* is not a substitute for the original Funeral Video; because they identified no protectible derivative market that might be harmed; because Defendants' use is significantly transformative; and because the available evidence tended to confirm the absence of harm to any derivative market. Op. 66.

**A.    *The Opinion's Limited Reliance on the* Restatement *Is Wholly Consistent with Settled Law, Including Supreme Court Precedent.***

Plaintiffs first criticize the Opinion's reliance on the *Restatement of Law, Copyright*. However, each proposition as to which the Opinion cites the *Restatement* also cites independent authority. *See* Op. 20, 68-69, 75-77, 78 n.18.

In particular, Plaintiffs attack the Opinion's citation to the *Restatement* for the proposition that in assessing the fourth factor, courts should not engage in circular reasoning—*e.g.*, by holding a market must have existed for use of the copyrighted work because the copyright owner wanted to be paid for the use asserted to be fair. Pet. 14. But the Opinion introduces this concept not by citing the *Restatement* but by quoting *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 38 (2021), where the Supreme Court, finding fair use, endorsed caution against the "danger of circularity posed by considering unrealized licensing opportunities," since "it is a given in every fair use case that plaintiff suffers a loss of a potential market if that potential is defined as the theoretical market for licensing the very use at bar." Op. 68. Likewise, the Panel's related discussion limiting cognizable harm to statutory derivatives comes from 17 U.S.C. § 101 and *Campbell*, 510 U.S. at 592. Op. 69, 76. The

10

rightsholder's burden to identify a derivative market comes from the Second Circuit. *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116 n.6 (2d Cir. 1998); *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 194 (2d Cir. 2024); Op. 70-71. So, every *Restatement* citation in the Opinion derives from settled law.

Plaintiffs' disingenuous attack is particularly apparent in the Petition's assertion that a *Restatement* comment misdescribes the holding in *Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132 (2d Cir. 1998)). Pet. 6. However, the Panel quotes *Castle Rock* accurately for the proposition that "copyright owners may not preempt exploitation of transformative markets" and never characterized, much less mischaracterized, that case's result. Op. 69 (quoting *Castle Rock*, 150 F.3d at 145 n.11).

### B.      *The Opinion Properly Follows and Distinguishes* Campbell.

Plaintiffs next argue that *Campbell* compelled the First Opinion's result and that nothing has since justified a different one. Yet as the Panel noted after rehearing, the First Opinion failed to recognize that while the defendant in *Campbell* identified a plausible derivative market—non-parody rap versions of "Oh, Pretty Woman" (*id.* at 593-94; Op. 77), Plaintiffs here ***never*** identified a protectible derivative market, below or on appeal; they merely speculated that "it's hard to imagine that there was not" one. Op. 71. Where the rightsholder identifies no market, the defendant has nothing to negate. That is why the Panel held that "this discussion from *Campbell* is

11

inapposite" (Op. 77)—not, as Plaintiffs' truncated quotation has it, that "*Campbell*

is inapposite." Pet. 14. Nor, contrary to the facts in *Campbell*, was the record here

"silent" on the lack of harm to Plaintiffs. On summary judgment, Sepi admitted that

he "never licensed, sold, or otherwise commercially exploited any of his work," and

his testimony disclosed no commercial plans. Op. 75.[4] The Opinion follows

*Campbell* to the letter, while noting that certain factors present in *Campbell* simply

do not apply.

## C.    *Plaintiffs Cannot Point to Supposed "Nonprofit" Use of the Funeral Video.*

Next, the Petition argues that the Opinion incorrectly found the absence of

market harm solely because Plaintiffs had not made money from the Funeral Video.

Pet. 11-12 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417,

446-47 n.28 (1984) ("*Sony-Betamax*")). Yet again, the assertion relies on jumbled

logic.

First, Plaintiffs do not dispute that on appeal, they did not challenge the district

court's finding that the Documentary "is not a substitute for the original Funeral

---

[4] The Petition argues that existence of a licensing market for "documentary use" of video footage can be shown by pointing to practices of other documentary filmmakers generally. Pet. 15. Plaintiffs have not made this specific argument previously, and it has been waived. In any event, the argument cannot overcome the Opinion's sound holdings that "copyright owners may not preempt … exploitation of transformative markets," and that a creator's decision to pay for transformative uses does not prove the existence of a protectible derivative-use market. Op. 69, 74-75 (citation omitted).

Video." Op. 67, 72. For this reason alone, any hypothetical "market" for the original Funeral Video is irrelevant.

Putting this aside, the argument fails for multiple other reasons. Footnote 28 of *Sony-Betamax* states that "copyright law does not require a copyright owner to charge a fee for the use of his works." However, this point was made in the context not of market harm under the fourth fair-use factor, but of whether Sony's device had "substantial noninfringing uses." 464 U.S. at 442-47. In any event, an identified market already existed: a market for home video. In contrast, Plaintiffs identified no market of any kind, free or paid. Op. 66, 75, 77.

The other cases on which Plaintiffs rely involved existing, identified markets, and stressed that where money was not exchanged, the copyright owner was still receiving something in return. *See Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117-19 (9th Cir. 2000) (verbatim copying of an entire religious text for the same devotional purpose, noting "compensation may take a variety of forms"); *Video Pipeline, Inc. v. Buena Vista Home Ent.*, 342 F.3d 191, 202 (3d Cir. 2003) (quoting same); *Philpot v. Indep. J. Review*, 92 F.4th 252, 260-61 (4th Cir. 2024) (a photograph republished for the same illustrative purpose; copyright owner's licensing practice was to require either payment or attribution); *Princeton University Press*, 99 F.3d 1381, 1387-88 (6th Cir. 1996) (*en banc*) (proven, functioning coursepack-permissions market in which fees were routinely

13

paid); *Ringgold*, 126 F.3d 70, 81 (2d Cir. 1997) (counting "only traditional, reasonable, or likely to be developed markets"). Here, Plaintiffs identified *no* protectible markets.

### D. *Plaintiffs' Claim to Have "Licensed" the Original Video Is Equally Irrelevant, and Contradicted by the Record.*

Neither is there merit to Plaintiffs' contention that YouTube's terms of service requiring a "license" to post a video contradicts the Panel's observance that the Funeral Video had never been licensed. Pet. 7-8. The Opinion held this because Plaintiffs admitted unequivocally on summary judgment, in their Rule 56.1 response, that Sepi "has never licensed, sold, or otherwise commercially exploited any of his work (including the Videos)." *See* Op. 9, 75 (citing 1App.167 at ¶ 51; 4App.22 at ¶ 51). Plaintiffs cannot now argue contrary to these admissions, never contested below or on appeal. And again, Plaintiffs do not challenge that the Documentary is not a substitute for the Funeral Video.

Moreover, Plaintiffs' argument that a license granted under YouTube's terms of service proves a "market" is specious. Many—perhaps most—who post videos on YouTube have no market for their work. Under Plaintiffs' contorted argument, a parent who posted videos of a five-year-old's birthday party to YouTube could automatically show a relevant market that was vulnerable to harm. Plaintiffs' own authority confirms the point: the YouTube license they invoke is, by their own

14

description, "non-exclusive" and "royalty-free." Pet. 11; *see Richardson v. Townsquare Media, Inc.*, 174 F.4th 299, 315 (2d Cir. 2026).

\* \* \*

Finally, even assuming *arguendo* that Plaintiffs' arguments on the fourth factor were correct—and they are not—the Opinion's end result would not change. As the Panel noted, even if "the fourth factor weighed slightly against fair use, that would not overcome the other three factors in this case, which weigh strongly in favor of fair use." Op. 78 n.18.[5] The Petition does not engage with this holding at all, conceding the point.

## IV.   PLAINTIFFS' PURPORTED FIFTH FAIR-USE FACTOR: ATTRIBUTION

Finally, Plaintiffs contend that Defendants' failure to credit Sepi with filming the Funeral Video weighs against fair use. Pet. 21-22. Although Plaintiffs appear to assimilate this argument to the first factor, some courts have considered attribution as it relates to whether a secondary user acted in bad faith in using the original work. *See Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255, 266 (4th Cir. 2019); Pet. 21 (describing attribution as among fair use's "equitable considerations"). Here, the

---

[5] *Harper & Row*'s description of the fourth factor as the "single most important element," Pet. 9, does not assist Plaintiffs. As the Opinion recognizes, later decisions, including *Warhol*, require all four factors be "weighed together, in light of the purposes of copyright." Op. 19-20, 78; 598 U.S. at 550-51.

15

undisputed evidence is that Sepi was given an opportunity to request both payment and credit, and never sought either.[6]

In any event, even assuming bad faith could be claimed (and it cannot), the Supreme Court has cast grave doubt on whether bad faith is relevant to fair use. In *Google*, the Court found "justifiable" the "skepticism" *Campbell* had expressed "about whether bad faith has any role in a fair use analysis," because "[c]opyright is not a privilege reserved for the well-behaved." 593 U.S. at 32 (citing *Campbell*, 510 U.S. at 585 n.18). *Campbell* held as much: an offer to give credit and pay a fee does not bear on fair use, because "[i]f the use is otherwise fair, then no permission need be sought or granted." 510 U.S. at 585 n.18.

Plaintiffs' circuit authority on attribution is equally unavailing. Three of the six decisions predate *Campbell*: *Weissmann* and *Narell* were decided in 1989, *Rogers* in 1992. *Narell* affirmed a judgment of fair use for the defendant. *Weissmann* is nothing like this record—there, the defendant "actually attempted to pass off the work as his own." 868 F.2d 1313, 1324 (2d Cir. 1989). And *Núñez* and *Bell* both found fair use; in *Bell* the defendant credited the copied passage, which shows only

---

[6]As the Panel noted, Defendants **did** offer to compensate Sepi. Op. 7. Royal Goode also licensed clips from Exotic and Jeff Lowe, both of whom purported to own all the videos taken at the Park. *Id.* When approached, Sepi did not claim ownership, ask for compensation or attribution, or even assert authorship; he replied that he could not help because he no longer worked for the Park, and referred Royal Goode to his former boss, Exotic. *See id.* The undisputed evidence of Defendants' good faith could not be stronger.

16

that a court may note credit where it exists, not that its absence defeats fair use. In

*Philpot*, unlike here, the Court independently found the use non-transformative and

"exploitative." 92 F.4th at 260.

In sum, Plaintiffs identify no decision holding that a lack of attribution defeats

fair use, and Supreme Court authority leads to the contrary decision.

## CONCLUSION

For the reasons discussed, the Petition should be denied.

DATED: August 10, 2026                    Respectfully submitted,

By: /s/ Robert H. Rotstein
Robert H. Rotstein (CA Bar #72452)
Emily F. Evitt (CA Bar #261491)
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
(310) 312-2000 – Telephone
(310) 312-3100 – Facsimile
rxr@msk.com
efe@msk.com

Mack J. Morgan, III (OBA #6397)
MJMLAW PLLC
6618 N. Hillcrest Ave.
Nichols Hills, OK 73116
(405) 343-7454 - Telephone
mack@mjmlaw.biz

*Attorneys for Defendants-Appellees
Netflix, Inc. and Royal Goode
Productions LLC*

17

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)-(4) because this brief contains 3,900 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(B).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(A), and the typestyle requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO, Times New Roman 14-point.

I further certify, pursuant to 10th Cir. R. 25.5, that all required privacy redactions have been made.


Dated: August 10, 2026                 /s/ Robert H. Rotstein
                                       Robert H. Rotstein

18

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 10, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that counsel for all parties are registered CM/ECF users and that service to Plaintiffs-Appellants will be accomplished by the CM/ECF system.

/s/ Robert H. Rotstein
Robert H. Rotstein