NO. 22-6086

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

WHYTE MONKEE PRODUCTIONS, LLC; TIMOTHY SEPI,

PLAINTIFFS-APPELLANTS,

v.

NETFLIX, INC.; ROYAL GOODE PRODUCTIONS, LLC,

DEFENDANTS-APPELLEES.

On Appeal from the United States District Court
for the Western District of Oklahoma
(No. 5:20-CV-00933-D)
The Honorable Timothy D. DeGiusti, Chief U.S. District Judge

BRIEF OF *AMICI CURIAE* AUTHORS ALLIANCE, ELECTRONIC
FRONTIER FOUNDATION, AMERICAN LIBRARY ASSOCIATION,
ASSOCIATION OF RESEARCH LIBRARIES, AND PUBLIC
KNOWLEDGE IN SUPPORT OF DEFENDANTS-APPELLEES LIMITED
PETITION FOR PARTIAL PANEL REHEARING
AND REHEARING EN BANC

Dave Hansen
AUTHORS ALLIANCE
2705 Webster St. #5805
Berkeley, CA 94705
dave@authorsalliance.org

Mitchell L. Stoltz
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
mitch@eff.org
(415) 436-9333

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amici Curiae* state as follows: *Amicus Curiae* Authors Alliance does not have a parent corporation and no publicly held corporation owns 10% or more of its stock. *Amicus Curiae* Electronic Frontier Foundation does not have a parent corporation and no publicly held corporation owns 10% or more of its stock. *Amicus Curiae* American Library Association does not have a parent corporation and no publicly held corporation owns 10% or more of its stock. *Amicus Curiae* Association of Research Libraries does not have a parent corporation and no publicly held corporation owns 10% or more of its stock. *Amicus Curiae* Public Knowledge does not have a parent corporation and no publicly held corporation owns 10% or more of its stock.

Dated: May 2, 2024        By:   s/ *Mitchell L. Stoltz*
                                              Mitchell L. Stoltz

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ....................................................... ii

TABLE OF CONTENTS ............................................................................... iii

TABLE OF AUTHORITIES ........................................................................... iv

STATEMENT OF INTEREST.......................................................................... 1

INTRODUCTION ........................................................................................ 3

    I.   THE SUPPREME COURT CONTINUES TO RECOGNIZE FAIR USE
       PURPOSES BEYOND CRITICISM AND COMMENTARY.................... 3

   II.  THE PANEL'S UNJUSTIFIED NARROWING OF THE FIRST FACTOR
       ENDANGERS MANY ESTABLISHED FAIR USES............................... 7

CONCLUSION........................................................................................... 11

CERTIFICATE OF COMPLIANCE................................................................. 13

CERTIFICATE OF DIGITAL SUBMISSION .................................................... 14

CERTIFICATE OF SERVICE ........................................................................ 15

**TABLE OF AUTHORITIES**

*Cases*

*Andy Warhol Foundation v. Goldsmith,*
  598 U.S. 508 (2023)...............................................................*passim*

*ASTM v. Public.Resource.Org., Inc.,*
  84 F. 4th 1262 (D.C. Cir. 2023)................................................... 9

*Authors Guild v. Google, Inc.,*
  F.3d 202 (2d Cir. 2015) ............................................................. 5

*Bill Graham Archives v. Dorling Kindersley,*
  448 F. 3d 605 (2d Cir. 2005) ................................................... 10

*Campbell v. Acuff-Rose Music,*
  510 U.S. 569 (1994)................................................................ 5, 6

*Elvis Presley Enterprises, Inc. v. Passport Video,*
  349 F.3d 622 (9th Cir. 2003) ................................................... 10

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.,*
  654 F.3d 989 (9th Cir. 2011) ................................................... 11

*Golan v. Holder,*
  565 U.S. 302 (2012)................................................................... 3

*Google, LLC v. Oracle America, Inc.,*
  593 U.S. 1 (2021)........................................................................ 5

*Hofheinz v. A & E Television Networks,*
  146 F. Supp. 2d 442 (S.D.N.Y. 2001 ...................................... 10

*New Era Publications Intern., ApS v. Carol Pub. Group,*
  904 F.2d 152 (2d Cir. 1990) ...................................................... 9

*Sofa Entertainment v. Dodger Productions,*
  709 F. 3d 1273 (9th Cir. 2013) ............................................... 10

*Time, Inc. v. Bernard Geis Associates,*
  293 F. Supp. 130 (S.D.N.Y. 1968) ............................................ 8

*Statutes*

17 U.S.C. § 107 ....................................................................................... 3, 4

*Other Authorities*

Alan Yuhas & Maria Cramer, *What Happened After 'Tiger King',* NY TIMES, Oct. 20, 2020 ....................................................................................... 11

ASSOCIATION OF INDEPENDENT VIDEO AND FILMMAKERS ET AL., DOCUMENTARY FILMMAKERS STATEMENT OF BEST PRACTICES IN FAIR USE (2005) ...................... 7

CENTER FOR SOCIAL MEDIA, AMERICAN UNIVERSITY, SET OF PRINCIPLES IN FAIR USE FOR JOURNALISM (2013) ............................................................. 7

Pamela Samuelson, *Unbundling Fair Use,* 77 Fordham L. Rev. 2537 (2009) ......... 3

**STATEMENT OF INTEREST[1]**

Authors Alliance is a 501(c)(3) nonprofit with over 2,700 members. We provide resources and guidance on legal issues for authors, such as our legal guide, *Fair Use for Non-Fiction Authors*. Our members rely on fair use every day in their research and writing and those uses would be significantly constrained by the panel's decision in this case.

The Electronic Frontier Foundation ("EFF") is a member-supported, nonprofit civil liberties organization. EFF has worked for over 30 years to protect fundamental rights in the digital world. With tens of thousands of dues-paying members, EFF represents the interests of technology users in court cases and policy debates regarding the application of law to digital technologies. EFF, its members, and the community of technology users they represent have a strong interest in a copyright system that promotes progress by safeguarding freedom of expression and access to knowledge.

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than amici or their counsel has made any monetary contributions intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

The American Library Association ("ALA"), established in 1876, is a nonprofit professional organization of about 50,000 librarians, library trustees, and other friends of libraries dedicated to providing and improving library services and promoting the public interest in a free and open information society. The Association of Research Libraries ("ARL") is an association of 127 research libraries in the United States and Canada. ARL promotes equitable access to and effective use of recorded knowledge in support of teaching and research. ALA and ARL work collaboratively on copyright issues through the Library Copyright Alliance. Collectively, these associations represent over 100,000 libraries in the United States. They share a strong interest in the balanced application of copyright law to digital uses. Libraries have engaged actively in the fair use landscape for decades, and remain committed to fair use as a crucial tool.

Public Knowledge is a consumer rights organization dedicated to promoting freedom of expression, an open internet, and access to affordable communications tools and creative works. As part of this work, Public Knowledge has advocated before Congress, in courts, and before administrative agencies to strengthen and protect fair use as a backbone of free expression and creativity.

**INTRODUCTION**

This case merits rehearing or rehearing en banc because the panel's opinion erred in misreading recent Supreme Court precedent to dramatically narrow the scope of fair use. This misreading threatens many important, established lawful uses of copyrighted works for scholarship, news reporting, and other forms of expression.

**I.    THE SUPPREME COURT CONTINUES TO RECOGNIZE FAIR USE PURPOSES BEYOND CRITICISM AND COMMENTARY.**

Fair use is a limitation on copyright, rooted in the First Amendment,[2] that has historically allowed for a wide variety of uses of copyrighted works. The Copyright Act identifies some paradigmatic but nonexclusive examples of fair use: "criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research," 17 U.S.C. § 107. Courts have found a variety of other uses to be fair, such as setting historical context, supporting an argument, or proving a point. *See* Pamela Samuelson, *Unbundling Fair Use,* 77 Fordham L. Rev. 2537, 2571 (2009).

The panel opinion, misreading the Supreme Court's recent decision in *Andy Warhol Foundation v. Goldsmith*, proceeded as if fair use applies only in cases of artistic criticism and comment. It ignored the many other favored purposes identified

_____

[2] Fair use is one of the Copyright Act's "built-in First Amendment accommodations." *Golan v. Holder*, 565 U.S. 302, 330 (2012).

across decades of fair use caselaw—including uses of verbatim excerpts from copyrighted works as historical references, news reporting, or illustration—that would easily justify the type of use at issue in this case. By ignoring these other long-favored uses, the panel's decision essentially converts the Supreme Court's decision in *Warhol* from a nuanced reaffirmation of fair use precedent into a radical rewrite of the law.

Context matters for understanding the *Warhol* decision. That case was about whether fair use supported the Warhol Foundation in licensing a Warhol print for a magazine cover, where the print was itself based on a photograph that the plaintiff also licensed for use on magazine covers. 598 U.S. 508 (2023). The Supreme Court analyzed only the first fair use factor, "the purpose and character of the use," which calls for an inquiry into how the purpose of the challenged use compares to the purpose of the original. 17 U.S.C. § 107(1).

Because the two specific uses at issue were similar—licensing portraits of a celebrity for magazine covers—the court understandably focused on the artistic and creative interaction between Warhol's print and Goldsmith's original photograph, particularly the extent to which the Warhol print commented on or criticized the photograph. Although it was natural for the Court to focus on such uses—those were the closest to the ones before it—the Court gave no indication that these examples should encompass the full scope of uses favored under the first fair use factor.

The opinion instead confirmed a broader range of favored uses. The Court repeatedly referred to criticism as a *nonexclusive* example of a favored use. 598 U.S. at 530, 532, 544-45, 557. The Court also discussed approvingly prior caselaw finding fair uses that involved no commentary or criticism, including scanning and storing the full text of books, *Authors Guild v. Google, Inc.,* 804 F.3d 202 (2d Cir. 2015), and copying portions of a programming interface to use them in a new operating system, *Google, LLC v. Oracle America, Inc.*, 593 U.S. 1 (2021). The Court even engaged in such non-critical fair use itself, by reproducing Prince commemorative magazine covers as evidence of a competitive market for Prince portraits on magazine covers. *Warhol,* 598 U.S. at 521. The panel's interpretation of the first factor would render all of these uses, including the Supreme Court's own use, disfavored under the first factor. Surely this is a bizarre result.

The *Warhol* Court, emphasizing the continued vitality of its landmark 1994 fair use decision in *Campbell v. Acuff-Rose Music*, 510 U.S. 569 (1994), described the first factor analysis as involving an inquiry into "the justification for the use." Thus, the "'central' question under the first factor" is "whether the new use served a purpose distinct from the original, or instead superseded its objects." *Warhol,* 598 U.S. at 542 (citing *Campbell*, 510 U.S. at 579). The *Campbell* decision itself, while it concerned a parody, established a general framework for approaching the first factor. *See* 510 U.S. at 581 ("[P]arody, like any other use, has to … be judged case

by case, in light of the ends of the copyright law."). The *Warhol* Court's discussion

of commentary was an application of this general framework, not a replacement.

The panel opinion did not meaningfully engage with this "central" question,

instead focusing on whether Netflix engaged in sufficient criticism or commentary

that targeted the creative aspects of the original funeral video. The panel wrote that

> Defendants simply wished to use Mr. Sepi's Funeral Video to convey
> a new meaning or message—*viz.,* commenting on and criticizing Mr.
> Exotic. More specifically, Defendants used the Funeral Video, which
> Mr. Sepi created for the purpose of "remembrance," … for a different
> purpose—*viz.,* to comment on Mr. Exotic's purported megalomania.

Panel Op. at 23. While it is true that the first fair use factor does not support merely

repackaging a work because the subsequent user feels they "can make it better,"

*Warhol*, 598 U.S. at 547 n.21, there are many acceptable reasons why such a use

might be justified beyond criticism or commentary that targets the underlying work.

And while cases of arguably competing artistic uses such as in *Campbell* (a pop song

built from the melody and lyrical refrain of an existing song) or *Warhol* (a

commercial portrait built from an existing commercial portrait) may benefit from an

analysis of whether the new work sufficiently targets the creative content of the

original to avoid charges of "lazy appropriation," the Court was also clear that

"targeting is not always required." *Id.*

In focusing narrowly on criticism and commentary, which is only an example of transformative use, the panel foreclosed the possibility of other transformative justifications that favor fair use.

## II. THE PANEL'S UNJUSTIFIED NARROWING OF THE FIRST FACTOR ENDANGERS MANY ESTABLISHED FAIR USES.

If the panel's opinion is left standing, it will negatively affect thousands of creators who engage in fair uses that do not "target" the creative content of the underlying work through criticism or commentary and yet, like the Netflix Series, use those materials for the historical value and newsworthiness of the content they communicate. Documentary filmmakers, nonfiction writers, journalists, and other creators rely on fair use in these circumstances. *See* e.g., ASSOCIATION OF INDEPENDENT VIDEO AND FILMMAKERS ET AL., DOCUMENTARY FILMMAKERS STATEMENT OF BEST PRACTICES IN FAIR USE (2005), https://cmsimpact.org/wp-content/uploads/2016/01/Documentary-Filmmakers.pdf (documenting industry-wide best practices for fair use including "quoting copyrighted works of popular culture to illustrate an argument or point" and "use of copyrighted material in a historical sequence."); CENTER FOR SOCIAL MEDIA, AMERICAN UNIVERSITY, SET OF PRINCIPLES IN FAIR USE FOR JOURNALISM (2013), https://www.wcl.american.edu/index.cfm?LinkServID=48909486-C7BE-0D76-146B0CECC8F293E5 (fair uses of copyrighted material in news reporting or

analysis may include uses for "illustration" and "historical reference"); AUTHORS ALLIANCE, FAIR USE FOR NONFICTION AUTHORS (2017), https://www.authorsalliance.org/wp-content/uploads/2017/11/AuthorsAllianceFairUseNonfictionAuthors.pdf ("Nonfiction authors regularly use copyrighted material to illustrate, support, or prove an argument. … [H]ere the material being used is not itself the object of the author's commentary.")

These creators have developed these best practices by relying on decades of precedent—decisions that the panel's decision conflicts with. For example, in *Time, Inc. v. Bernard Geis Associates*, 293 F. Supp. 130 (S.D.N.Y. 1968), the court was asked to weigh whether it was fair use for the publisher of a book called "Six Seconds in Dallas" to include sketches of President Kennedy's assassination. The sketches were derived from clips of the famous Zapruder film. Finding that fair use favored the book's publisher, the court was unconcerned that the use made no comment on the film itself, but emphasized the public benefit of using the film to aid the book's argument by having the "fullest information" available, which was only possible by using the contents of the film. *Id.* at 146. But using the panel's reasoning in this case, because *Six Seconds in Dallas* did not comment on the creative or artistic merit of the Zapruder film, its use should be disfavored under fair use.

Many other cases before and after have found that historical and informational uses favor fair use, emphasizing the need not only to report facts, but also to allow readers and viewers to experience *how* they were communicated. In 2023, the D.C. Circuit held that the verbatim copying and online posting of private technical standards that had been incorporated into government regulations is transformative under the first fair use factor because the purpose of the use—explaining the law— was different from that of the rightsholders', who sought to explain industry best practices. The secondary user did not comment on the standards, and yet the court's decision followed, and explicitly applied, the *Warhol* decision. *ASTM v. Public.Resource.Org., Inc.*, 84 F. 4th 1262, 1267 (D.C. Cir. 2023).

*ASTM* is just the latest example of a long tradition of recognizing non-commentary uses as fair. In *New Era Publications Intern., ApS v. Carol Pub. Group*, 904 F.2d 152, 156 (2d Cir. 1990), the court found that a biographer of L. Ron Hubbard was justified in using lengthy quotations from Hubbard contained in copyrighted books. The court concluded that this use was favored not because the biography commented on the creative aspects of Hubbard's writing, but "to convey the facts contained therein, and not for their expression." *Id.* at 156.

In this case, the panel specifically rejected such a rationale for a very similar use: "Defendants used the Funeral Video . . . to comment on Mr. Exotic's purported megalomania . . ." by presenting his words, tone, and demeanor at his husband's

funeral. Panel Op. at 23. The panel concluded that this type of use was not favored under the fair use analysis because it contained no comment on the "creative decisions or intended meaning" of the funeral video itself. Panel Op. at 21.

Many other cases reject the panel's approach. In *Bill Graham Archives v. Dorling Kindersley,* 448 F. 3d 605 (2d Cir. 2005), the Second Circuit approved of reuse of Grateful Dead concert posters in a book about the history of the band. Though the books contained no comment on the creative content of the posters themselves, the court found that the first factor favored the use because the publisher used the "images as historical artifacts to document and represent the actual occurrence of Grateful Dead concerts." *Id.* at 609. In *Sofa Entertainment v. Dodger Productions*, the use of a seven-second clip from the Ed Sullivan show in a musical about the band "The Four Seasons" was "heavily favor[ed]" under the first factor because of its use as a "biographical anchor," making no commentary at all about the show itself. 709 F. 3d 1273, 127 (9th Cir. 2013). In *Hofheinz v. A & E Television Networks*, the court found that a TV biography that used a short clip of movie star Peter Graves from one of his earliest films was justified not because it commented on the original film but because it "enabl[ed] the viewer to understand the actor's modest beginnings in the film business." 146 F. Supp. 2d 442, 446–47 (S.D.N.Y. 2001). *See also Elvis Presley Enterprises, Inc. v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003) (defendant's use of television clips featuring Elvis was

"transformative because they are cited as historical reference points in the life of a remarkable entertainer"), *overruled on other grounds in Flexible Lifeline Sys., Inc. v. Precision Lift, Inc*., 654 F.3d 989, 995 (9th Cir. 2011).

While the events leading up to the funeral scene in *Tiger King* do not carry the same historical significance as President Kennedy's assassination or the broad cultural significance of the Grateful Dead, they do bear on an issue of public interest and debate, and the funeral clip serves as an important historical marker and biographical anchor. *See* Alan Yuhas & Maria Cramer, *What Happened After 'Tiger King',* NY TIMES, Oct. 20, 2020, https://www.nytimes.com/article/tiger-king-updates.html. The panel gave this historical use no weight because it did not "comment" on the funeral video itself. Panel Op. at 21. That approach conflicts with decades of precedent and established practice.

## CONCLUSION

If the Supreme Court in *Warhol* had meant to overrule such a significant body of law that protects so much expressive activity, it would have said so. We therefore ask the court to grant the petition for rehearing to ensure that the panel, or the full court, has a chance to evaluate the exceptional importance of this issue.

Dated: May 2, 2024                   Respectfully submitted,

                                     /s/ *Mitchell L. Stoltz*
                                     Mitchell L. Stoltz

                                     ELECTRONIC FRONTIER
                                     FOUNDATION
                                     815 Eddy Street
                                     San Francisco, California 94109
                                     mitch@eff.org
                                     (415) 436-9333

                                     Dave Hansen
                                     AUTHORS ALLIANCE
                                     2705 Webster St. #5805
                                     Berkeley, CA 94705
                                     dave@authorsalliance.org

                                     *Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I certify as follows:

1.      This Brief of Amici Curiae Authors Alliance, Electronic Frontier Foundation, American Library Association, Association of Research Libraries, and Public Knowledge in Support of Defendants-Appellees Limited Petition for Partial Panel Rehearing and Rehearing En Banc, with the type-volume limitation of Fed. R. App. P. 29(b)(4) because this brief contains 2,488 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365, the word processing system used to prepare the brief, in 14-point font in Times New Roman font.

Dated:  May 2, 2024

/s/ *Mitchell L. Stoltz*
Mitchell L. Stoltz

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing:

(1)     all required privacy redactions have been made per 10th Cir. R. 25.5;

(2)     if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3)     the digital submissions have been scanned for viruses with the most recent version of a commercial virus-scanning program, Virus Total, updated May 2, 2024, and according to the program are free of viruses.


Dated:  May 2, 2024                              /s/ *Mitchell L. Stoltz*
                                                 Mitchell L. Stoltz

**CERTIFICATE OF SERVICE**

I certify that on this of May 2, 2024, I electronically filed the foregoing Brief

of Amici Curiae using the Court's CM/ECF system which will send notification of

such filing to all parties of record.


Dated:  May 2, 2024                    /s/ *Mitchell L. Stoltz*
                                       Mitchell L. Stoltz