# In the
# United States Court of Appeals
# for the Tenth Circuit

---

WHYTE MONKEE PRODUCTIONS, LLC, TIMOTHY SEPI,

*Plaintiffs-Appellants,*

*v.*

NETFLIX, INC., ROYAL GOODE PRODUCTIONS, LLC,

*Defendants - Appellees.*

---

On Appeal from the United States District Court
for the Western District of Oklahoma (No. Civ-20-933-D),
Hon. Timothy D. DeGiusti, Judge Presiding.

---

## MOTION FOR LEAVE TO FILE BRIEF OF *AMICI CURIAE* IN SUPPORT OF APPELLEES' PETITION FOR PARTIAL PANEL REHEARING AND REHEARING *EN BANC*

---

Jack I. Lerner
UCI Intellectual Property, Arts, and
    Technology Clinic
University of California, Irvine School
    of Law
401 E. Peltason Dr.
Irvine, CA 92697
Telephone: 949-824-7684
Email: jlerner@law.uci.edu
*Counsel of Record*

Rom Bar-Nissim
Heah Bar-Nissim LLP
1801 Century Park East
Los Angeles CA 90067

Michael Donaldson
Chris Perez
Donaldson Callif Perez LLP
5600 West Adams Boulevard
Los Angeles, CA 90016

*Counsel for Amici Curiae*
*International Documentary Association, Film Independent, Kartemquin*
*Educational Films, Women In Film, and The University Film And Video*
*Association*

# CORPORATE DISCLOSURE STATEMENT

The International Documentary Association has no parent corporation and no publicly held corporation owns 10% or more of its stock.

Film Independent has no parent corporation and no publicly held corporation owns 10% or more of its stock.

Kartemquin Educational Films, Inc., has no parent corporation and no publicly held corporation owns 10% or more of its stock.

Women In Film has no parent corporation and no publicly held corporation owns 10% or more of its stock.

The University Film And Video Association has no parent corporation and no publicly held corporation owns 10% or more of its stock.

**TO THE HONORABLE COURT:**

Pursuant to Federal Rule of Appellate Procedure 29(b), the International Documentary Association, Film Independent, Kartemquin Educational Films, Women In Film, and The University Film and Video Association (collectively, "*Amici*") respectfully move the Court for leave to file as *Amici Curiae* in support of the Limited Petition for Partial Panel Rehearing And Rehearing *En Banc* (the "Petition") of Defendant-Appellees Netflix, Inc. and Royal Good Productions LLC (collectively, "Appellees") pursuant to Federal Rule of Appellate Procedure ("FRAP") Rule 29(b). *Amici*'s brief has been filed concurrently with this motion.

## TENTH CIRCUIT RULE 27.1 DISCLOSURE

Pursuant to Tenth Circuit Rule 27.1, *Amici* contacted counsel for the Appellees and Plaintiffs-Appellants Whyte Monkey Productions LLC and Timothy Sepi (collectively, "Appellants") via email on April 26, 2024 to determine their position on this motion. Appellees have indicated that they will not oppose *Amici*'s motion. Appellants did not respond. On April 30, 2024, *Amici* followed up with counsel for Appellants via email, but *Amici* did not receive a response.

## INTEREST OF AMICI CURIAE

The International Documentary Association is a non-profit 501(c)(3) organization dedicated to documentary filmmakers and increasing public awareness of the documentary film genre. The International Documentary

Association was founded in 1982, and it exists to serve the needs of those who create this vital documentary art form. The International Documentary Association's programs and resources reach over 30,000 filmmakers and supporters annually.

Film Independent is a non-profit 501(c)(3) organization with over 8,000 members in all 50 states dedicated to independent filmmakers (including documentary filmmakers) and increasing public awareness of independent filmmakers. Film Independent was founded in 1984, and it exists to serve the needs of those who create independent filmmakers.

Kartemquin Educational Films is a non-profit 501(c)(3) organization dedicated to empowering the creation of stories that foster a more engaged and just society by producing documentaries on a wide range of issues, championing filmmakers in developing their craft, and aligning with partners who understand that documentaries are powerful vehicles for truth that can transform the world around us. For over 50 years, Kartemquin Educational Films has produced award-winning documentaries exploring a range of contemporary issues including *Hoop Dreams*, *Grassroots Chicago*, *Vietnam Long Time Coming*, *The Interrupters*, *The Trials of Muhammad Ali*, and *Minding the Gap*. Projects produced by Kartemquin Educational Films have received four Academy Award nominations, six Emmy awards and four Peabody awards.

Women in Film is a non-profit 501(c)(3) organization dedicated to promoting women in the film industry both in front of and behind the camera, including documentary filmmakers. Women in Film was founded in 1973, and it exists to advance women in the screen industries.

The University Film and Video Association is a non-profit 501(c)(3) organization dedicated to promoting filmmakers, teachers, scholars, students, archivists, distributors, college departments, and manufacturers in the university setting. Founded in 1947, UFVA now has 500 members, teaching production film students in 275 universities across the country and around the world.

The Panel Decision in this case creates a new, restrictive test for fair use that will severely disrupt documentary filmmaking by undermining many well-established forms of documentary practice. *Amici* and their members create, promote, and exhibit documentaries and other works of non-fiction on a wide array of important subjects and each has a profound interest in protecting the rights of documentary filmmakers who utilize archival materials in ways that will be deeply affected by this case.

## DESIRABILITY AND RELEVANCE OF AMICUS BRIEF

*Amici* believe that their brief will assist the Court in understanding: (1) core documentary practices that have been recognized as fair use by courts throughout the country, including the Second, Fourth, and Ninth Circuits; (2) how the Supreme

Court's opinions in fair use cases, including *Warhol Foundation for the Visual Arts v. Goldsmith*, 598 U.S. 508 (2023), support these time-honored, well-established fair use practices; and (3) how the Panel Decision is in direct conflict with this body of law and will create a massive chilling effect on documentary filmmaking.

*Amici's* brief, which is attached to this motion, meets the requirements of Federal Rule of Appellate Procedure 29(b), and it provides the Court with an important perspective not offered by the parties to the litigation. An *amicus* brief should be permitted if it "state[s] the movant's interest, 'why an amicus brief is desirable,' and 'why the matters asserted are relevant to the disposition of the case.'" *New Mexico Oncology and Hematology Consultants, Ltd. v. Presbyterian Healthcare Services*, 994 F.3d 1166, 1175-76 (10th Cir. 2021) (*quoting* FRAP Rule 29(b)). *Amici*'s brief provides the Court the opportunity to view the issues in this case from the perspective of the documentary film industry, and all who strive to tell and preserve stories about our culture, contemporary civil discourse, and collective history through the audio-visual medium.

## <u>CONCLUSION</u>

For the above reasons, *Amici* respectfully ask the Court for leave to appear as *Amici Curiae* in support of Appellees' Petition for Partial Panel Rehearing and Rehearing *En Banc*. The proposed amicus brief is attached hereto pursuant to Federal Rule of Appellate Procedure 29(a)(3).

Dated: May 2, 2024

Respectfully submitted:

*/s/ Jack I. Lerner*

Jack I. Lerner CA #220661

UCI Intellectual Property, Arts, and
    Technology Clinic

University of California, Irvine School
    of Law

401 E. Peltason Dr.

Irvine, CA 92697

Telephone: 949-824-7684

Email: jlerner@law.uci.edu

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH RULE 27(d)(2)(A)

I hereby certify that the foregoing motion complies with Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 833 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f) and Tenth Circuit Rule 32(b).

I further certify that this motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this motion has been prepared in a proportionally spaced font in Microsoft Word 2019 using 14-point Times New Roman.

Dated: May 2, 2024                    Respectfully submitted:


                                      */s/ Jack I. Lerner*
                                      Jack I. Lerner CA #220661
                                      UCI Intellectual Property, Arts, and
                                          Technology Clinic
                                      University of California, Irvine School
                                          of Law
                                      401 E. Peltason Dr.
                                      Irvine, CA 92697
                                      Telephone: 949-824-7684
                                      Email: jlerner@law.uci.edu

                                      *Counsel for Amici Curiae*

# CERTIFICATE OF DIGITAL SUBMISSION

Counsel for Appellant hereby certifies that all required privacy redactions have been made, which complies with the requirements of Federal Rule of Appellate Procedure 25(a)(5) and Tenth Circuit Rule 25.5.

Counsel further certifies that the ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program Windows Defender Version 1.409.642.0 last updated on May 2, 2024 and, according to the program, is free of viruses.

Dated: May 2, 2024   Respectfully submitted:


*/s/ Jack I. Lerner*
Jack I. Lerner CA #220661
UCI Intellectual Property, Arts, and
 Technology Clinic
University of California, Irvine School
 of Law
401 E. Peltason Dr.
Irvine, CA 92697
Telephone: 949-824-7684
Email: jlerner@law.uci.edu

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 2, 2024, the foregoing motion for leave to file *Amicus Curiae* brief and its accompanying *Amicus Curiae* brief was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system and served on all counsel of record via CM/ECF.

*/s/ Czarina Ellingson*
Law Clinics Coordinator
University of California, Irvine School
of Law

# In the
# United States Court of Appeals
# for the Tenth Circuit

---

WHYTE MONKEE PRODUCTIONS, LLC, TIMOTHY SEPI,

*Plaintiffs-Appellants,*

*v.*

NETFLIX, INC., ROYAL GOODE PRODUCTIONS, LLC,

*Defendants - Appellees.*

---

On Appeal from the United States District Court
for the Western District of Oklahoma (No. Civ-20-933-D),
Hon. Timothy D. DeGiusti, Judge Presiding.

---

**BRIEF OF *AMICI CURIAE* INTERNATIONAL DOCUMENTARY
ASSOCIATION, FILM INDEPENDENT, KARTEMQUIN EDUCATIONAL
FILMS, INC., WOMEN IN FILM, AND THE UNIVERSITY FILM AND
VIDEO ASSOCIATION IN SUPPORT OF APPELLEES' PETITION FOR
PARTIAL PANEL REHEARING AND REHEARING *EN BANC***

---

Jack I. Lerner
UCI Intellectual Property, Arts, and
    Technology Clinic
University of California, Irvine
    School of Law
401 E. Peltason Dr.
Irvine, CA 92697
Telephone: 949-824-7684
Email: jlerner@law.uci.edu
*Counsel of Record*

Rom Bar-Nissim
Heah Bar-Nissim LLP
1801 Century Park East
Los Angeles CA 90067

Michael Donaldson
Chris Perez
Donaldson Callif Perez LLP
5600 West Adams Boulevard
Los Angeles, CA 90016

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

I.  INTEREST OF *AMICI CURIAE* .......................................................1

II.  SUMMARY OF ARGUMENT ...........................................................1

III. ARGUMENT ...........................................................................4

   A.  Documentary Fair Use Practices Are Well-Established and Supported by an Extensive Body of Legal Precedent ...............................................4

   B.  *Warhol* Supports Existing Jurisprudence on the Application of Fair Use to Documentaries ...................................................................8

   C.  The Panel Decision Is in Direct Conflict with Established Case Law and Creates a Chilling Effect on Protected Speech.............................10

IV. CONCLUSION ........................................................................11

CERTIFICATE OF COMPLIANCE ...................................................123

CERTIFICATE OF DIGITAL SUBMISSION ......................................14

CERTIFICATE OF SERVICE ............................................................15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Arica Inst., Inc. v. Palmer,*
  761 F.Supp. 1056 (S.D.N.Y. 1991) .......................................................... 5

*Arrow Prods, Ltd. v. Weinstein Co. LLC,*
  44 F.Supp.3d 359 (S.D.N.Y. 2014) ...................................................... 5, 7

*Bill Graham Archives v. Dorling Kindersley Ltd.,*
  448 F.3d 605 (2d Cir. 2006) ...................................................... 5, 6, 7, 10

*Bouchat v. Baltimore Ravens L.P.,*
  737 F.3d 932 (4th Cir. 2013) ............................................... 5, 6, 7, 10, 11

*Bouchat v. NFL Properties LLC,*
  910 F.Supp.2d 798 (D. Md. 2012) ...................................................... 5, 6, 7

*Brown v. Netflix, Inc.,*
  462 F.Supp.3d 453 (S.D.N.Y. 2020) ......................................................... 7

*Campbell v. Acuff-Rose Music, Inc.,*
  510 U.S. 569 (1994) ................................................................................ 3

*Comerica Bank & Trust, N.A. v. Habib,*
  433 F.Supp.3d 79 (D. Mass. 2020) ........................................................... 5

*Cramer v. Netflix, Inc.,*
  2023 WL 6130030 (W.D. Pa. Sept. 18, 2023) .......................................... 9

*Eldred v. Ashcroft,*
  537 U.S. 186 (2003) ............................................................................ 3, 4

*Elvis Presley Enters., Inc. v. Passport Video,*
  349 F.2d 622 (9th Cir. 2003) ......................................................... 5, 6, 10

*Google LLC v. Oracle America, Inc.,*
  593 U.S. 1 (2021) ............................................................................... 2, 3

ii

*H.C. Wainwright & Co. v. Wall St. Transcript Corp.*,
    418 F.Supp. 620 (S.D.N.Y. 1976) ............................................................ 5

*Hofheinz v. A&E Television Networks*
    146 F.Supp.2d 442 (S.D.N.Y. 2001) .................................................. 5, 6, 7

*Hofheinz v. AMC Prods, Inc.*,
    147 F.Supp.2d 127 (E.D.N.Y. 2001) .................................................. 5, 6, 7

*Hofheinz v. Discovery Commc'ns, Inc.*,
    2001 WL 1111970 (S.D.N.Y. Sept. 20, 2001) ............................... 4, 5, 6, 7

*Int'l, ApS v. Henry Holt & Co.*,
    695 F.Supp. 1493 (S.D.N.Y. 1988) .................................................... 5, 6, 7

*Kelley v. Morning Bee, Inc.*,
    2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023) ........................................... 9

*Lennon v. Premise Media Corp.*,
    556 F.Supp.2d 310 (S.D.N.Y. 2008) ....................................................... 7

*Marano v. Metro. Museum of Art*,
    472 F.Supp.3d 76 (S.D.N.Y. 2020) .................................................. 5, 6, 7, 9

*Monbo v. Nathan*,
    623 F.Supp.3d 56 (E.D.N.Y. 2022) .................................................... 4, 6, 7

*Monster Commc'ns, Inc. v. Turner Broad. Sys.*,
    935 F.Supp. 490 (S.D.N.Y. 1996) ........................................................ 5, 7

*Nat'l Ctr. for Jewish Film v. Riverside Films LLC*,
    2012 WL 4052111 (C.D. Cal. Sept. 14, 2012) .......................................... 6

*New Era Publ'ns Int'l, ApS v. Carol Publ'g Grp.*,
    904 F.2d 152 (2d Cir. 1990) .............................................................. 5, 6, 7

*Red Label Music Publ'g, Inc. v. Chila*,
    388 F.Supp.3d 975 (N.D. Ill. 2019) ..................................................... 5, 6

*Rosemont Enters., Inc. v. Random House, Inc.*,
    366 F.2d 303 ........................................................................................... 5

*Salinger v. Random House, Inc.*,
   811 F.2d 90 (2d Cir. 1987) ................................................................. 5, 6, 7

*SOFA Entm't, Inc. v. Dodger Prods, Inc.*,
   709 F.3d 1273 (9th Cir. 2013) ................................................................. 5

*Sundeman v. Seajay Soc'y, Inc.*,
   142 F.3d 194 (4th Cir. 1998) ................................................................. 5, 7

*Video-Cinema Films v. CNN*,
   U.S. Dist. LEXIS 25687 (S.D.N.Y. Nov. 28, 2001) ............................... 6

*Wade Williams Distrib. Inc. v. Am. Broad. Co.*,
   2005 WL 774275 (S.D.N.Y. Apr. 5, 2005) ............................................. 5

*Warhol Foundation for the Visual Arts v. Goldsmith*,
   598 U.S. 508 (2023) .................................................... 1, 2, 3, 5, 8, 9, 10

*Warren Publ'g Co. v. Spurlock*,
   645 F.Supp.2d 402 (E.D. Pa. 2009) ....................................................... 5, 7

*Whyte Monkey Productions, LLC v. Netflix, Inc.*,
   97 F.4th 699 (10th Cir. 2024) ................................................................. 2, 10

*Wright v. Warner Books, Inc*,
   953 F.2d 731 (2d Cir. 1991) ................................................................... 5, 7

**Statutes**

17 U.S.C. §107 ............................................................................................ 3, 4, 7

**Other Authority**

Register of Copyrights, *2010 Recommendation, Rulemaking on Exemptions from Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies* ............................................................................. 4

*Documentary Filmmakers' Statement of Best Practices in Fair Use*, Center for Media & Social Impact ............................................................................. 8

iv

# CORPORATE DISCLOSURE STATEMENT

The International Documentary Association has no parent corporation and no publicly held corporation owns 10% or more of its stock.

Film Independent has no parent corporation and no publicly held corporation owns 10% or more of its stock.

Kartemquin Educational Films, Inc., has no parent corporation and no publicly held corporation owns 10% or more of its stock.

Women In Film has no parent corporation and no publicly held corporation owns 10% or more of its stock.

The University Film And Video Association has no parent corporation and no publicly held corporation owns 10% or more of its stock.

# I.  INTEREST OF *AMICI CURIAE*

*Amici* are non-profit organizations that represent and support the nationwide documentary filmmaking community though production, fiscal sponsorship, grantmaking, convenings, and education, and are intimately familiar with the needs of the documentary community at large. Together, these organizations represent a community of over 40,000 filmmakers, educators, and film students.

This case concerns the application of the fair use doctrine to documentary filmmaking. As representatives of the documentary filmmaking community, *Amici* are best suited to opine on this issue and the impact of the Panel Decision on documentary filmmaking.

No party or its counsel authored this brief in whole or in part. No person other than the *Amici* contributed any money to fund the preparation or submission of this brief.

# II.  SUMMARY OF ARGUMENT

The Panel Decision's new, restrictive test for fair use will severely disrupt documentary filmmaking by calling many well-established forms of documentary practice into question. The Panel Decision places the Tenth Circuit in direct conflict with decades of fair use jurisprudence, including decisions by the Second, Fourth and Ninth Circuits. Nothing in the Supreme Court's narrow decision in *Warhol Foundation for the Visual Arts v. Goldsmith* ("*Warhol*"), 598 U.S. 508

(2023), requires this departure; rather, *Warhol* supports the critically important, time-honored fair use practices that documentarians rely upon every day.

The Panel Decision's new rule calls into question any use of a copyrighted work that does not directly "comment" on the author's "creative decisions" or "intended meaning." *Whyte Monkey Prods., LLC v. Netflix, Inc.*, 97 F.4th 699, 714-715 (10th Cir. 2024). This rule threatens to contract fair use in unprecedented fashion. Documentarians routinely repurpose copyrighted works—without discussing the author's contributions—to illuminate, analyze, and discuss the world around us. They do so in the mode of quotation, the most time-honored limitation in copyright, to: demonstrate an argument; present a historical reference point; and provide otherwise unknown or unavailable information about the work. These well-established fair use practices have been the lifeblood of documentary filmmaking for decades.

Countless judicial decisions support these uses, as do the Supreme Court's decisions in *Warhol* and *Google LLC v. Oracle America, Inc.*, 593 U.S. 1 (2021). *Google* broadly emphasizes that the fundamental question for fair use is "whether the copier's use fulfills the objective of copyright law to stimulate creativity for public illumination." *Id.* at 29 (internal citations and quotations omitted). *Warhol*'s narrow holding is primarily concerned with directly competitive use in a well-established market for which the original work was created. That is not at issue in

this appeal, nor does it apply to the type of productive uses made by documentarians. *Warhol* does provide useful guidance that supports fair use in the documentary filmmaking context: it reemphasizes *Google*'s directive to consider the public benefits of the use in question, and instructs that a use is fair if it serves a "distinct purpose" as compared to the original work by "add[ing] something new, with a further purpose or different character." 598 U.S. at 509, 531 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).

The productive uses documentarians make more than meet this test. They are widely considered paradigmatic fair uses that engage in many of the socially valuable pursuits Congress recognized when it codified fair use in the Copyright Act, including criticism, commentary, news reporting, scholarship, and research. 17 U.S.C. §107.

The Panel Decision will create an immense chilling effect on documentary filmmaking. It will require documentarians to find and seek license deals from people who cannot be identified or have no interest in licensing their works. It will create massive transaction costs that will make documentary filmmaking prohibitively expensive. It will grant copyright holders unprecedented control over discussions of history and culture, turning copyright into a form of private censorship. These effects will stifle basic modes of commentary and directly undermine fair use's role as a "built-in First Amendment accommodation[]" that

provides a "breathing space within the confines of copyright." *Eldred v. Ashcroft*, 537 U.S. 186, 219-20 (2003).

*Amici* urge this Court to reconsider the Panel Decision by granting Appellees' Petition for Partial Panel Rehearing and Rehearing *En Banc*.

## III. <u>ARGUMENT</u>

### A. <u>Documentary Fair Use Practices Are Well-Established and Supported by an Extensive Body of Legal Precedent</u>

The Panel Decision calls into question a range of practices that documentarians have employed for decades and federal courts have repeatedly upheld. As the Register of Copyrights has explained, "[w]hen a motion picture is used for purposes of criticism and comment, such a use is *a form of quotation, long recognized as paradigmatic productive use* with respect to textual works, which is at the core of fair use's function as a free-speech safeguard." Register of Copyrights, *2010 Recommendation, Rulemaking on Exemptions from Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies*, 52 (emphasis added).

Consequently, it has been well-established for decades that "[d]ocumentaries and biographies fall within the protected categories of § 107, and are entitled to the *presumption* that the use of the copyrighted material is fair." *Monbo v. Nathan*, 623 F.Supp.3d 56, 100 (E.D.N.Y. 2022) (emphasis added) (*quoting Hofheinz v.*

4

*Discovery Commc'ns, Inc.* ("*Discovery*"), 2001 WL 1111970, at *3 (S.D.N.Y. Sept. 20, 2001)) (*citing Monster Commc'ns, Inc. v. Turner Broad. Sys.*, 935 F.Supp. 490, 493-94 (S.D.N.Y. 1996)).[1] As *Warhol* recognizes, such uses are "the sorts of copying that courts and Congress most commonly have found to be fair uses" because they "serve a manifestly different purpose from the work itself." 598 U.S. at 528.

The Panel Decision threatens at least three fair use practices central to documentary filmmaking. First, documentarians quote materials for their "factual

---

[1] *See Bouchat v. Baltimore Ravens L.P. ("Baltimore Ravens*"), 737 F.3d 932, 944-45 (4th Cir. 2013); *SOFA Entm't, Inc. v. Dodger Prods, Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013); *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.2d 622, 628-29 (9th Cir. 2003); *Red Label Music Publ'g, Inc. v. Chila Prods,*, 388 F.Supp.3d 975, 984-85 (N.D. Ill. 2019); *Arrow Prods, Ltd. v. Weinstein Co. LLC,* 44 F.Supp.3d 359, 368 (S.D.N.Y. 2014); *Hofheinz v. A&E Television Networks* ("*A&E*"), 146 F.Supp.2d 442, 446-47 (S.D.N.Y. 2001); *Hofheinz v. AMC Prods, Inc.* ("*AMC*"), 147 F.Supp.2d 127, 137-38 (E.D.N.Y. 2001). *See also Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609-10 (2d Cir. 2006); *Sundeman v. Seajay Soc'y, Inc.*, 142 F.3d 194, 202-03 (4th Cir. 1998); *Wright v. Warner Books, Inc*, 953 F.2d 731, 737 (2d Cir. 1991); *New Era Publ'ns Int'l, ApS v. Carol Publ'g Grp.* ("*Carol*"), 904 F.2d 152, 156 (2d Cir. 1990); *Salinger v. Random House, Inc.*, 811 F.2d 90, 96 (2d Cir. 1987); *Rosemont Enters., Inc. v. Random House, Inc.*, 366 F.2d 303, 307 & n. 4 (2d Cir. 1966); *Marano v. Metro. Museum of Art*, 472 F.Supp.3d 76, 83 (S.D.N.Y. 2020); *Comerica Bank & Trust, N.A. v. Habib*, 433 F.Supp.3d 79, 92-93 (D. Mass. 2020); *Warren Publ'g. Co. v. Spurlock*, 645 F.Supp.2d 402, 419 (E.D. Pa. 2009); *Wade Williams Distrib. Inc. v. Am. Broad. Co.*, 2005 WL 774275, at *8 (S.D.N.Y. Apr. 5, 2005); *Arica Inst., Inc. v. Palmer*, 761 F.Supp. 1056, 1067 (S.D.N.Y. 1991); *New Era Publ'ns. Int'l, ApS v. Henry Holt & Co.* ("*Henry Holt*"), 695 F.Supp. 1493, 1506 (S.D.N.Y. 1988); *H.C. Wainwright & Co. v. Wall St. Transcript Corp.*, 418 F.Supp. 620, 625 (S.D.N.Y. 1976).

content" (and "not for [their] expressive content") to demonstrate or evidence a point being made in the documentary. *Bouchat v. NFL Properties LLC* ("*NFL Properties*"), 910 F.Supp.2d 798, 811 (D. Md. 2012). Consider a documentary on the history of fashion in the 1940s that uses a brief clip from a movie as evidence that most men wore hats in that era. Countless cases support similar practices as fair use.[2]

Second, filmmakers use archival materials as "historical reference points" to situate the subject of a documentary in historical context, or to demonstrate a point. *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.2d at 629.[3] In *Bouchat v. Baltimore Ravens*, the Fourth Circuit permitted the use of copyrighted logos in a documentary about the Baltimore Ravens football team as part of the "historical record" so that the filmmakers could "tell stories of past drafts, major events in Ravens history, and player careers." 737 F.3d at 940.

Third, filmmakers use copyrighted materials to comment on the content

---

[2] *E.g., Video-Cinema Films v. CNN*, U.S. Dist. LEXIS 25687, *6 (S.D.N.Y. Nov. 28, 2001); *Discovery*, 2001 WL 1111970, *4; *AMC*, 147 F.Supp.2d at 137-138; *A&E*, 146 F.Supp.2d at 446-447; *Henry Holt*, 695 F.Supp. at 1507, 1512, 1518; *Carol*, 907 F.2d at 156; *Salinger*, 811 F.2d at 96-97.

[3] *See Bill Graham*, 448 F.3d at 609-610; *Red Label*, 388 F.Supp.3d at 984-985; *Nat'l Ctr. for Jewish Film v. Riverside Films LLC*, 2012 WL 4052111, at *3 (C.D. Cal. Sept. 14, 2012); *Marano*, 472 F.Supp.3d at 84-85; *A&E*, 146 F.Supp.2d at 446-447; *AMC*, 147 F.Supp.2d at 137-138; *Monbo*, 623 F.Supp.3d at 100; *Carol*, 904 F.2d at 156.

contained in the work itself,[4] including through juxtaposing the quoted material

with content from other sources.[5] A perennial example is the inclusion of footage

of a controversial public figure's speech to comment and provide insight on that

speech or the public figure. As another example, in his film *Expelled*, Ben Stein

used John Lennon's song "Imagine" to help make a point about the dangers of

secular humanism. *Lennon v. Premise Media Corp.*, 556 F.Supp.2d 310, 324

(S.D.N.Y. 2008).

Critically, fair use has *never* been restricted to "critique [of] the artistic

merits of the [original work] itself"—such as "the photographer's choice of

lighting or focus." *Marano*, 472 F.Supp.3d at 85. Quite the opposite: courts

repeatedly recognize that the kinds of uses described above "undeniably

constitute[] a combination of comment, criticism, scholarship and research, all of

which enjoy favored status under § 107." *Monster*, 935 F.Supp. at 493-494.[6]

---

[4] *See AMC*, 147 F.Supp.2d at 137-138; *A&E*, 146 F.Supp.2d at 446-447; *Monster*, 935 F.Supp. at 493-494; *Henry Holt*, 695 F.Supp. at 1507, 1512, 1518; *Warren*, 645 F.Supp.2d at 421; *Arrow*, 44 F.Supp.3d at 368; *Sundeman*, 142 F.3d at 202-03; *Carol*, 904 F.2d at 156; *Salinger*, 811 F.2d at 96; *Marano*, 472 F.Supp.3d at 85.

[5] *See Brown v. Netflix, Inc.*, 462 F.Supp.3d 453, 461 (S.D.N.Y. 2020); *Monbo*, 623 F.Supp.3d at 100; *Carol*, 904 F.2d at 156.

[6] *See A&E*, 146 F.Supp.2d at 446; *AMC*, 147 F.Supp.2d at 138; *Discovery*, 2001 WL 1111970, *3; *Baltimore Ravens*, 737 F.3d at 944; *NFL Properties*, 910 F.Supp.2d at 811; *Monbo*, 623 F.Supp.3d at 100; *Wright*, 953 F.2d at 736; *Bill Graham*, 448 F.3d at 609; *Marano*, 472 F.Supp.3d at 83.

The documentary film industry has relied on this substantial body of case law for decades. All major streaming platforms and distributors show films that make these types of uses, and key business insurers routinely write policies covering them. The *Documentary Filmmaker's Statement of Best Practices in Fair Use* is a measure of how consistent the jurisprudence has been.[7] The documentary community developed the *Statement* in 2005 to help non-lawyer documentarians make fair use safely, appropriately, and responsibly. It is still in use today.

**B.** **_Warhol_ Supports Existing Jurisprudence on the Application of Fair Use to Documentaries**

*Warhol* is in accord with the decades of case law on fair use in documentary filmmaking. *Warhol* was primarily concerned with a directly competitive uses in a well-established licensing market for which the original work was created, and it explicitly limited its holding to that context. *Supra* note 4. The Court repeatedly clarified that commerciality, while relevant, is "not dispositive." *Id.* at 510, 530, 537 & n.13. Furthermore, *Warhol* deliberately and explicitly left room for the exact types of uses documentarians make, as when it indicated that its analysis would be "different if Orange Prince appeared in an art magazine alongside an article about Warhol." *Id.* at 536 n. 12.

---

[7] *Documentary Filmmakers' Statement of Best Practices in Fair Use*, Center for Media & Social Impact, https://cmsimpact.org/code/documentary-filmmakers-statement-of-best-practices-in-fair-use/.

*Warhol* also provided helpful guidance as to the contours of transformative use. It explained that the first fair use factor "must be evaluated in the context of the *specific use* at issue," which must be closely analyzed to determine whether that use "has a distinct purpose" that "furthers the goal of copyright, namely, to promote the progress of science and the arts." *Id.* at 510 (emphasis added). Further, a specific use serves a purpose "distinct from the original" when "the use comments on, criticizes, or *provides otherwise unavailable information about the original*." *Id*. at 544-45 (emphasis added). This is exactly what documentarians do with repurposed materials: they provide new or "otherwise unavailable" information, context, and insight through commentary, criticism, and research. *Id.* It is only when "commentary has no critical bearing on the *substance* or style of the original composition" that "the claim to fairness" is diminished. *Id.* at 510 (emphasis added).

*Warhol* does not mark a sea change from the decades of legally recognized fair uses made by documentarians. Quite the opposite: post-*Warhol* decisions involving documentaries have found that such uses are supported by *Warhol*. *See Kelley v. Morning Bee, Inc.*, 2023 WL 6276690, *11-12 (S.D.N.Y. Sept. 26, 2023); *Cramer v. Netflix, Inc.*, 2023 WL 6130030, *5-8 (W.D. Pa. Sept. 18, 2023).

**C.** **The Panel Decision Is in Direct Conflict with Established Case Law and Creates a Chilling Effect on Protected Speech**

The Panel Decision significantly overreads *Warhol* by holding that "Defendants' use of the Funeral Video is not transformative" because they "did not comment on Mr. Sepi's video—*i.e.*, its creative decisions or intended meaning." *Whyte Monkey*, 97 F.4th at 714. *Warhol* provides no such instruction and explicitly recognizes that providing commentary, criticism or otherwise unavailable information of the content of the original is sufficient to satisfy the first fair use factor. Section III.B, *supra*.

The Panel Decision also creates a circuit split. It held that using a work as a "historical reference point" is not a fair use, while the Second, Fourth and Ninth Circuits hold the opposite. *Compare Whyte Monkey*, 97 F.4th at 714 *with Elvis Presley*, 349 F.2d at 629; *Bill Graham*, 448 F.3d at 609-610; *Baltimore Ravens*, 737 F.3d at 940.

*Amici* urge this Court to consider the Fourth Circuit's warning of the massive chilling effect on protected speech that will result from the Panel Decision's approach. If this Court does not revisit the Panel Decision, it would "require those wishing to produce films and documentaries to receive permission from copyright holders for fleeting factual uses of their works," which would "allow those copyright holders to exert enormous influence over new depictions of

historical subjects and events." *Baltimore Ravens*, 737 F.3d at 944-45. The resulting regime:

> would encourage bargaining over the depictions of history by granting copyright holders substantial leverage over select historical facts. It would force those wishing to create videos and documentaries to receive approval and endorsement from their subjects who could simply choose to prohibit unflattering or disfavored depictions. This would align incentives in exactly the wrong manner, diminishing accuracy and increasing transaction costs, all the while discouraging the creation of new expressive works. This regime…would chill the very artistic creation that copyright law attempts to nurture.

*Id.*

The Panel Decision would do more than make the Fourth Circuit's fears a reality. It would change filmmaking for the worse. Where the owner cannot be identified or is not interested in licensing the material, documentarians will be forced to embark on irrelevant tangents commenting on the style of the work. Appellees' Petition presents this Court the opportunity to avoid such an outcome.

## IV.    CONCLUSION

For the above reasons, *Amici* respectfully urge this Court to grant Appellees' Petition for Partial Panel Rehearing and Rehearing *En Banc*.

Dated: May 2, 2024          Respectfully submitted:

*/s/ Jack I. Lerner*

Jack I. Lerner CA #220661
UCI Intellectual Property, Arts, and
    Technology Clinic
University of California, Irvine School
    of Law
401 E. Peltason Dr.
Irvine, CA 92697
Telephone: 949-824-7684
Email: jlerner@law.uci.edu

*Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel certifies that this document complies with: (1) the word limit of Federal Rule of Appellate Procedure 29(b)(4) because it contains 2,598 words, excluding the parts of the brief exempted under Federal Rule of Appellate Procedure 32(f), according to the word-processing system used to prepare the document; and (2) the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5-6) because it has been prepared with proportionally spaced typeface using 14-point Times New Roman.

Dated: May 2, 2024                    Respectfully submitted:

*/s/ Jack I. Lerner*
Jack I. Lerner CA #220661
UCI Intellectual Property, Arts, and
    Technology Clinic
University of California, Irvine School
    of Law
401 E. Peltason Dr.
Irvine, CA 92697
Telephone: 949-824-7684
Email: jlerner@law.uci.edu

*Counsel for Amici Curiae*

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing: (1) all required privacy redactions have been made per Tenth Circuit Rule 25.5; (2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents; (3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus-scanning program, Windows Defender Version 1.409.642.0 last updated on May 2, 2024, and according to the program are free of viruses.

Dated: May 2, 2024                Respectfully submitted:

*/s/ Jack I. Lerner*
Jack I. Lerner CA #220661
UCI Intellectual Property, Arts, and
    Technology Clinic
University of California, Irvine School
    of Law
401 E. Peltason Dr.
Irvine, CA 92697
Telephone: 949-824-7684
Email: jlerner@law.uci.edu

*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 2, 2024, the foregoing motion for leave to file *amicus curiae* brief and its accompanying *amicus curiae* brief was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system and served on all counsel of record via CM/ECF.

/s/ Czarina Ellingson
Law Clinics Coordinator
University of California, Irvine School of Law